ERROL WOLCOTT, petitioner.

No. 91-P-4.

Middlesex. March 12, 1992. - April 29, 1992.

Present: ARMSTRONG, DREBEN, & GILLERMAN, JJ.

*Practice, Criminal*, Sentence. *Words*, "From and after."

In a habeas corpus proceeding by a prisoner who had received seven
    sentences of incarceration, three of which were vacated on his prior ap-
    peal, this court considered the entire sentencing record, including the
    vacated sentences, for the purpose of determining the trial judge's in-
    tent in structuring the four remaining sentences; in the circumstances,
    periods of incarceration that were originally imposed to run concur-
    rently with two vacated consecutive sentences were to run consecutively
    to each other, and a sentence originally imposed to be served "from and
    after" expiration of the last vacated sentence was to be served "from
    and after" expiration of the last remaining sentence. [477-479]

PETITION filed in the Superior Court Department on June
8, 1990.

The case was heard by *Mel L. Greenberg*, J.

*Emanuel Howard* for the petitioner.

*David Slade* for the respondents.

DREBEN, J. Claiming that his sentences have expired be-
cause of the reversal of three of his convictions in *Common-
wealth* v. *Wolcott*, 28 Mass. App. Ct. 200 (1990), the peti-
tioner appeals from the denial of his petition for habeas
corpus. The petition was heard by the Superior Court judge
who conducted the trial and who originally imposed the
sentences.[1] We affirm the denial of the petition.

---

[1]The petition was originally before a different Superior Court judge.
Pointing to *Averett, petitioner*, 404 Mass. 28, 31 (1989), the petitioner
claims that it was error for that judge to transfer the petition to the trial
judge. There is no allegation that the transfer resulted in the petition not
being heard "freely, easily, cheaply, expeditiously, and amply." See Part
II, c. 6,. art. 7, of the Constitution of the Commonwealth. Where the effect

We take the facts from the "Agreed Statement of Facts" filed by the parties in the Superior Court, supplemented by matters of record, and also supplemented by the uncontested statement of counsel for the petitioner that the Suffolk district attorney's office "represented to him that it had no intention of retrying petitioner on those three indictments."

The incidents leading to the convictions are set forth in our opinion in 28 Mass. App. Ct. 200, and will not be repeated here. On January 27, 1988, the petitioner was sentenced on seven guilty verdicts returned in the Superior Court.

The sentences were as follows and we shall henceforth refer to them by letter.

"(A) No. 064748 - 9 to 10 years with 303 days deemed served [armed assault with intent to murder];

"(B) No. 064749 - 9 to 10 years concurrent with No. 064748, with 303 days deemed served [armed assault with intent to murder];

"(C) No. 065426 - 3 to 5 years concurrent with No. 064748, with 303 days deemed served [assault by means of a dangerous weapon];

"(D) No. 065427 - 3 to 5 years concurrent with No. 064748, with 303 days deemed served [assault by means of a dangerous weapon];

"(E) No. 064703 - 9 to 10 years to take effect from and after No. 064748 [armed assault with intent to murder];

---

of the transfer to the trial judge does not transgress the constitutional provision, we see no abuse of discretion in the transfer. As indicated in *Averett, petitioner, supra*, however, there is no reason to restrict a person seeking habeas corpus relief to a hearing before the trial judge, and normally such a transfer should not be made. The trial judge's present recollection of his intention at the time of sentencing is irrelevant. See *Commonwealth v. Layne*, 21 Mass. App. Ct. 17, 18-20 (1985). See also our subsequent opinion in *Commonwealth* v. *Layne*, 25 Mass. App. Ct. 1, 4, 5 (1987).

"(F) No. 065424 - 3 to 5 years to take effect from and after No. 064748, and concurrent with No. 064703 [assault and battery by means of a dangerous weapon];

"(G) No. 065425 - 3 to 5 years to take effect from and after No. 064703 [assault and battery by means of a dangerous weapon]

· "The 303 days deemed served are pursuant to G. L. c. 127, § 129B, and G. L. c. 279, § 33A (Jail Credits)."

The judgments of conviction on the indictments for armed assault with intent to murder, the three longest sentences, were reversed in *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. at 212, because of prejudicial error in the allowance of certain testimony. Thus, the two initial concurrent nine-to-ten year sentences (A and B) and the nine-to-ten year on and after sentence (E) were reversed. In affirming the convictions on the other charges, we noted, at 28 Mass. App. Ct. at 212 n.19, "Without going into detail, we can say that the effect of the reversals on the sentences imposed by the judge will be to reduce the maximum imprisonment from twenty-five years to fifteen years (subject, of course, to what may occur on possible partial retrial)."[2]

Arguing that the footnote is mere dictum, the petitioner claims the effect of the reversal of sentences A and E to which sentences F and G were anchored caused the latter two sentences to collapse back to January 27, 1988, the date they were imposed. This, he urges, has the result that sentences F and G became concurrent with the initial sentences C and D, so that all four sentences were concurrent.

The parties agree that there are no controlling precedents in Massachusetts. The petitioner relies on the literal wording of the F and G sentences — F was specifically anchored to

---

[2]If sentence F is consecutive to sentences C and D (which are concurrent) and G is consecutive to F, the defendant must serve at the maximum fifteen years, that is, three consecutive five-year sentences.

sentence A and by its terms was to be consecutive only to that sentence. G was similarly connected to E.

There are, indeed, cases where stress is laid on the literal language used by the judge. In *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 131-133 (1975), the plaintiff, while serving sentences for certain crimes, received five concurrent sentences to take effect "from and after the expiration of any sentence the . . . [plaintiff] may now be serving." Three days later, he was sentenced to the house of correction for two years, "said sentence to take effect from and after the completion of the sentence or sentences the . . . [plaintiff] is now serving." The Supreme Judicial Court, citing with approval *Baranow* v. *Commissioner of Correction*, 1 Mass. App. Ct. 831, 832 (1973), held that "[t]he effect of a from and after sentence phrased in those terms is to make the sentence consecutive only with respect to the sentence then being served, not with respect to other sentences which have been imposed previously but which are not then being served. If a judge has the intention that the sentences he is imposing should be in addition to the aggregate of all previous sentences he should sentence 'from and after the expiration of all previous sentences which the defendant has been ordered to serve' " (citations omitted). *Id.* at 133.

Sentencing language, however, is not always construed literally or in favor of finding an ambiguity if such a construction would lead to defeating the purpose of the sentencing scheme. In *Carlino* v. *Commissioner of Correction*, 355 Mass. 159, 160 (1969), a judge imposed sentences "to take effect from and after the expiration of the sentence now being served." The plaintiff in that case argued that, since he was then serving several concurrent sentences, the "from and after" sentences should take effect on the expiration of the shortest sentence he was then serving. In rejecting that view, the court noted that, if the plaintiff's theory were followed, he would for purposes of determining parole eligibility receive good time credits based on the longest sentence which would then be deducted from the shortest sentence. "This . . .

would be absurd and would defeat the very purpose of imposing concurrent sentences." *Id.* at 161-162.

The petitioner also relies on a line of cases which hold that a "from and after" sentence following a prior sentence which is reversed collapses back to run as of the date of its imposition. *Brown* v. *Commissioner of Correction,* 336 Mass. 718, 721 (1958). A prisoner even receives credit for time served under an invalid sentence. *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 391 (1977). The rationale of these cases is that a prisoner should not serve "dead time" but should receive credit as matter of right for time served under an erroneous conviction. *Brown, supra* at 721. *Manning, supra* at 396-397. See also *Lewis* v. *Commonwealth,* 329 Mass. 445, 448 (1952). In the case at bar, however, there is no "dead time" or other unfairness to the petitioner in upholding the consecutive structure of the sentencing scheme.

Cases elsewhere suggest that the whole sentencing record be considered in construing the judge's intent. In other words, although the so-called "anchor" sentences if reversed are not effective as an agency of punishment (here sentences A and E), they may be considered "to evidence the intention of the court in respect of connected sentences." *Watson* v. *United States,* 174 F.2d 253, 254 (D.C. Cir. 1948). *Dailey* v. *United States,* 259 F.2d 433, 434 (7th Cir. 1958), cert. denied, 359 U.S. 937 (1959). *Niblock* v. *State,* 11 Kan. App. 2d 30, 34 (1985). See also *United States* v. *Welty,* 330 F. Supp. 699, 701 (E.D. Pa. 1971), aff'd, 468 F.2d 594 (3d Cir. 1972). In *Watson,* in *Dailey,* and in *Niblock,* a sentence (B) which was to be served consecutively to another sentence or sentences (A sentences) was held invalid. The question presented was how to treat other sentences which were to run concurrently with the B sentence. In each of the three cases, the court looked to the vacated sentence to evidence the intent of the trial judge, and in each case the court held that it was the judge's intent that the sentences concurrent to the failed "anchor" sentence commenced at the expiration of the prior sentence (A).

In *United States* v. *Welty, supra,* the prisoner was sentenced for four years each on five counts: counts 1, 2, and 3 to run consecutively; counts 4 and 5 to run concurrently with each other and with the sentence on count 3. After the convictions on counts 2, 3, and 4 were found to be invalid, the sentence on count 5 was held to be consecutive to count 1.

We think the rationale of these cases applies and that the vacated sentence can be considered to determine the intent of the trial judge. The sentencing scheme shows that the (F) sentence which was made concurrent with the reversed (E) sentence was intended to be a consecutive sentence. Similarly, sentence (G) was intended as a consecutive sentence.

It is true that, in the cases cited, the sentences were consecutive to valid sentences, while here F and G are specifically made consecutive to sentences which were reversed. Despite this distinction and despite *Jenkins* v. *United States,* 389 F.2d 765 (10th Cir. 1968),[3] we think the sentencing structure of the judge envisioned a series of consecutive sentences, each to follow the longest preceding valid sentence. Unlike the *Henschel* and *Baranow* cases previously cited, where the question was to interpret an intact sentencing scheme of the judge, here the question is to construe the scheme as truncated by our former decision. In such circumstances, the literal language of the trial judge is less significant than the entire sentencing structure as a whole.[4]

---

[3]In *Jenkins,* 389 F.2d at 766, the prisoner was sentenced as follows:

"For a period of five (5) years on Count 2 of the indictment, for a period of five (5) years on Count 3 of the indictment, the sentence on Count 3 of the indictment to run concurrently with the sentence imposed on Count 2, and for a period of three (3) years on Count 4 of the indictment, the sentence on Count 4 to run consecutively to the sentence imposed on Count 2."

The sentence on count 2 was vacated and the convictions on counts 3 and 4 were affirmed. The court, finding that there was no indication of the total number of years to be served intended by the sentence, held that the literal words of the sentence governed, and the sentence on count 4 became concurrent with the sentence on count 3.

[4]We note parenthetically that, in the transcript of the sentencing hearing, the judge, in imposing consecutive sentences, stated, "[T]here is absolutely no excuse whatsoever in our society for that kind of behavior. We

While our prior decision may not be determinative, the result we reach is the one envisioned therein. See 28 Mass. at 212 n.19. See also *United States* v. *Welty*, 468 F.2d at 595, where the court stated that the District Court's treatment of the sentences as consecutive "was the result intended by our [previous] decision."

*Order denying petition affirmed.*

---

cannot and will not tolerate it on the streets of this country in any city or town. It is totally unexcusable. And so, the sentence that is being passed upon you now will reflect that value."