RICHARD E. GARDNER *vs.* COMMISSIONER OF CORRECTION.

No. 99-P-1492.

Suffolk. October 16, 2001. - September 20, 2002.

Present: LENK, COWIN, & MCHUGH, JJ.

*Constitutional Law,* Sentence. *Due Process of Law,* Sentence. *Practice, Criminal,* Sentence.

The reversal of a prisoner's convictions on charges in Rhode Island did not cause two subsequent Massachusetts sentences, which were expressly ordered to be served "from and after" the Rhode Island sentences, to commence retroactive to the date of their imposition, where the prisoner was resentenced to a term of committed time in Rhode Island for the same criminal episode and was credited for the time already served. [34-41]

CIVIL ACTION commenced in the Superior Court Department on September 20, 1996.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

*David Slade* for the defendant.

*Catherine J. Hinton* for the plaintiff.

LENK, J. The difficulty confronting the plaintiff, Richard Gardner, is one peculiar to those who serially violate the laws of multiple jurisdictions. In this appeal, we are asked to determine the effect, if any, of the reversal of an out-of-State conviction upon prison sentences imposed by Massachusetts courts, where the Massachusetts sentences were expressly ordered to be served "from and after" the out-of-State sentences then being served and which were later reversed.

*Background.* On July 30, 1988, Gardner was arrested and held in Rhode Island in connection with a series of child kidnappings that had occurred in the Warwick area. On May 31,

1989, after being convicted of a number of charges,[1] he was sentenced by a Rhode Island Superior Court judge to a total of 190 years. Thereafter, in 1989 and 1991, Gardner was sentenced in separate Massachusetts proceedings to prison terms set to begin from and after any sentence presently being served.[2] At the time these Massachusetts sentences were imposed, Gardner was serving the 190-year Rhode Island sentence.

In November, 1992, the Rhode Island Supreme Court reversed Gardner's convictions in that jurisdiction. See *State* v. *Gardner*, 616 A.2d 1124 (R.I. 1992). Gardner remained in the custody of Rhode Island[3] and, on remand for a new trial in early 1993, he immediately pleaded guilty to the same offenses undergirding the prior Rhode Island convictions and was sentenced to a shorter term of, in essence, fifty years, with thirty years to serve. The effective date of the new sentences was the same as

---

[1]The charges included kidnapping, burglary, first-degree sexual assault, assault with a dangerous weapon, possession of a stolen vehicle, driving to elude a police vehicle, carrying a concealed weapon, and second-degree sexual assault.

[2]On August 2, 1989, Gardner was sentenced in Massachusetts by a Plymouth Superior Court judge to ten to fifteen years on a charge of forcible rape of a child. This sentence was ordered to be served "from and after any sentence that def[endant] is presently serving." On May 9, 1991, Gardner was sentenced, again in Plymouth Superior Court, this time for two counts of indecent assault and battery on a child under fourteen; he received a pair of seven and one-half to ten-year sentences that were to run consecutively to each other and concurrently with the August, 1989, Massachusetts sentence, and "from and after sentence presently serving in State of Rhode Island."

[3]At times between November, 1987, and November, 1992, Gardner was held in various Massachusetts institutions in connection with his offenses here, under the authority, inter alia, of the Interstate Agreement on Detainers, St. 1965, c. 892 (Agreement), and the New England Interstate Corrections Compact, St. 1962, c. 753 (Compact).

The Agreement provides a mechanism for a party State to secure temporary custody of a prisoner confined in another State for disposition of pending charges. See *Commonwealth* v. *Wilson*, 399 Mass. 455, 460 (1987). Article V(g) of the Agreement provides that, if transferred to another State, the prisoner remains "in the custody of and subject to the jurisdiction of the sending state."

Article III of the Compact allows party States to contract with one another for confinement of inmates on behalf of the sending State in institutions located within receiving States. Under art. IV(c), prisoners transferred under the Compact to other States nonetheless remain "at all times . . . subject to the jurisdiction of the sending state and may at any time be removed therefrom" by the sending State for various reasons.

that of the prior 190-year sentence, July 30, 1988, thus effectively crediting Gardner with the time he had served both awaiting retrial and under the prior sentence. During the sentencing hearing, the Rhode Island judge declared that the new sentences he imposed were to be served "concurrent" with each other and with the Massachusetts sentences he apparently thought Gardner was then serving. The Commonwealth was not represented at, nor did it participate in, this hearing.

From July 30, 1988, until the present, Gardner has remained in the lawful custody of the State of Rhode Island. See note 3, *supra.* In March, 1993, the Commonwealth notified Gardner that it did not recognize the Massachusetts and Rhode Island sentences as running concurrently, thereby conveying its view that he was not then serving time on the Massachusetts sentences, which it maintained had not yet commenced. Also in March, 1993, the Commissioner of Correction (commissioner) rejected an offer from the Rhode Island Department of Corrections to transfer Gardner to Massachusetts under the terms of the New England Interstate Corrections Compact, St. 1962, c. 753, in exchange for one Massachusetts prisoner.

*Procedural posture.* After receiving notice of the Commonwealth's position, Gardner filed suit for declaratory and other relief against the commissioner. He claimed that, under Massachusetts decisional law, his Massachusetts "from and after" sentences automatically commenced upon their imposition in 1989 and 1991 once the initial Rhode Island conviction was reversed, and that he is entitled to credit against the Massachusetts sentences for time he has served since 1989 and continues to serve in Rhode Island.[4] He also claimed that the denial of credit in contravention of clear authority was arbitrary and unjustified, amounting to a violation of his right to procedural due process and entitling him to attorney's fees and costs under 42 U.S.C. § 1988 (1994). On cross motions for summary judgment involving stipulated facts, the trial court

---

[4]Although in his complaint Gardner alleged that the Massachusetts "from and after" sentences commenced as of November 19, 1992, the date of the Rhode Island Supreme Court decision reversing his conviction, he also asserted in his summary judgment motion and contends on appeal that, under the decisional law upon which he relies, the "from and after" sentences commenced in 1989 and 1991 when they were imposed.

judge agreed with Gardner in both respects and allowed his motion. The commissioner timely appealed, claiming that Gardner's Massachusetts sentences have yet to commence and that he is therefore not entitled to any credit for time served in Rhode Island.

*Analysis.* Gardner bases his claim entirely upon two cases, *Brown* v. *Commissioner of Correction,* 336 Mass. 718 (1958) (*Brown*), and *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387 (1977) (*Manning*). He maintains that these two cases establish a bright-line rule to the effect that, whenever a "sentence presently serving," i.e., anchor sentence, is set aside because the conviction supporting it is reversed, the sentences that are to be served from and after it will automatically commence and will be deemed to have begun as of the dates of their imposition. Under these holdings, he argues, it is of no consequence whether or not the prisoner would suffer "dead time"[5] absent credit being given for the time already served under the invalid anchor sentence. The commissioner, in contrast, takes the view that *Brown* and *Manning* are not controlling, contending that the two cases do not establish a bright-line rule and are distinguishable on their facts.

Gardner's position, with which the judge agreed, is quite understandable if *Brown* and *Manning* are read in isolation. In *Brown,* the "from and after" sentences were imposed a few months after the original anchor sentences in 1952. In 1957, the anchor convictions on which Brown was then serving time were reversed on appeal and, on remand, Brown pleaded guilty and was sentenced to probation. The issue was when the "from and after" or consecutive sentences that Brown was then serving had begun to run. The court determined that Brown's "from and after" sentences began to run, not on the date the anchor convictions were reversed, but on the earlier date when the "from and after" sentences were first imposed. *Brown, supra* at 719. In *Manning,* the issue presented was whether the prisoner

---

[5]"Dead time" in this context is "time served under an invalid sentence for which no credit is given. See *Watson* v. *Henderson,* 350 F. Supp. 249, 251 (N.D. Ga. 1972); Wagner, Sentence Credit for 'Dead Time,' 8 Crim. L. Bull. 393 (1972)." *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 390 (1977).

was entitled to credit against the "from and after" sentence he was then serving for time he had served on earlier anchor convictions, where the anchor convictions were reversed on appeal and the prisoner, on remand, pleaded to a lesser charge and received a suspended sentence. *Manning, supra* at 388-389. The court observed that it could find nothing of record to permit the conclusion that, by virtue of the imposition of a suspended sentence on remand, credit had already been given for time served, and allowed the prisoner credit to avoid the dead time he would otherwise have served. *Id.* at 394-395.

Gardner contends that *Brown* and *Manning* establish a rule mandating that a "from and after" sentence be deemed automatically to have commenced as of the date of its imposition whenever an anchor conviction is reversed on appeal. We think, however, that a careful reading of the two cases and subsequent case law does not support the existence of so sweeping a rule.

As an initial matter, *Brown* and *Manning* were decided on facts quite different from those present here. First, unlike here, it was undisputed that the prisoners in *Brown* and *Manning* were serving their respective "from and after" sentences at the time they brought declaratory actions. The question in *Brown* was the date on which the "from and after" sentences had begun, while in *Manning* the question was the computation of credit against that "from and after" sentence for time the prisoner had already served before its imposition. See *Manning, supra* at 393-394. These questions arose because each prisoner had served time under anchor convictions that were reversed on appeal and, upon remand and resentencing, was not required to serve any further time in connection with those convictions. Had the prisoners not been accorded relief in the form of crediting time already served on the invalid anchor convictions against the "from and after" sentences, they would have served time in prison, deprived as they were of their liberty, and would have received no credit at all — a result understandably thought repugnant by the court. In *Brown*, the device for assuring credit was to move back the starting date of the "from and after" sentences to the date they had initially been imposed. See *Brown, supra* at 721; *Manning, supra* at 393. In *Manning*, that device

did not suffice, and credit was given for time served before the date the consecutive sentence was imposed but after the arrest and indictment underlying that conviction. See *id.* at 391. In contrast, here, Gardner upon remand and resentencing was required to serve a lesser but still substantial term of years, and he received credit against that lesser sentence for all the time he had previously served. He does not face the prospect of having served dead time.

A second material difference between Gardner's circumstances and those in *Brown* and *Manning* is that, in those two cases, the court addressed the effects upon Massachusetts "from and after" sentences following the reversal on appeal by a Massachusetts court of Massachusetts anchor sentences.[6] Neither case had occasion to address the jurisdictionally nuanced situation here, viz., the claimed effects upon Massachusetts consecutive sentences anchored to a foreign State's sentence, where that anchor sentence is later set aside and, upon reprosecution, the foreign State's court imposes a sentence predicated upon the

---

[6]Citing *Commonwealth* v. *Boland*, 43 Mass. App. Ct. 451 (1997), Gardner contends that his asserted *Brown/Manning* rule applies even if the anchor sentence hails from another jurisdiction. *Boland*, however, is inapposite because it did not concern the effect of a reversal of a foreign anchor sentence upon the commencement date of a Massachusetts "from and after" sentence. Instead, we awarded credit for the period of time Boland had spent in the custody of Florida beginning with his arrest as a fugitive from justice on a Massachusetts charge and ending when the Florida charges on which he was simultaneously being held were dismissed. We observed:

> "Because the Florida charges were dismissed, they must be deemed to be a nullity, as in *Manning*. Allowing the credit does not create the problem of double credit, and it recognizes the desired goal of eliminating dead jail time, even when it occurs in a foreign jurisdiction, so long as the confinement in the foreign jurisdiction is attributable to Massachusetts charges on which, as here, the defendant was later convicted and incarcerated."

*Commonwealth* v. *Boland, supra* at 456.

Unlike Gardner, Boland faced the prospect of dead time because the foreign charges were dismissed and never resurrected. Had Boland been convicted on the Florida charges, the time served likely would have been credited toward the Florida sentence. In those circumstances, we would have denied Boland credit toward his Massachusetts sentence for the time served after the Florida indictment in order to avoid the "double credit" problem. See *id.* at 454-455, discussing *Commonwealth* v. *Aquafresca*, 11 Mass. App. Ct. 975, 976-977 (1981).

court's determination that the Massachusetts sentences have already commenced to run.[7]

That materially different facts prompted the relief granted in *Brown* and *Manning* is not something to which we may turn a blind eye. Read with attention to their facts and as subsequently construed by our case law, we disagree with Gardner's contention that *Brown* and *Manning* establish a mechanistically applicable rule that a "from and after" sentence commences automatically upon its date of imposition whenever the conviction supporting the anchor sentence is reversed. Together, their essential holding is instead that, as a matter of fundamental fairness, a prisoner is entitled to credit toward a consecutive or "from and after" sentence for time served under an erroneous conviction when the prisoner would otherwise face dead time and where such an award would not clearly result in double credit nor allow the prisoner to "bank time" against future offenses. See *Brown*, 336 Mass. at 721 ("A sense of fairness . . . requires the rule that the second sentence, where a prior sentence falls because of reversal, should be moved forward and made to run as of the date of its imposition, *for otherwise a defendant will have served time for which he receives no credit*" [emphasis supplied]); *Manning*, 372 Mass. at 394 ("*Brown* . . . rejected 'an overly legalistic approach in matters of this sort,' . . . and adopted a rule that would remedy the *injustice of a prisoner serving time for which he receives no credit*" [emphasis supplied]); *Wolcott, petitioner*, 32 Mass. App. Ct.

---

[7]Numerous complexities arise by virtue of the fact that sentences were imposed by courts of both Massachusetts and Rhode Island, to be served in their respective States. Because we address only the issue raised below as to whether, as matter of Massachusetts law, Gardner's Massachusetts sentences have already commenced, we do not reach any questions lingering in the interstices of the parties' arguments concerning Gardner's prior periods of incarceration in Massachusetts, the Commonwealth's actions in response to subsequent efforts to have Gardner incarcerated in Massachusetts, and any related matters of credit that may be claimed against the Massachusetts sentences. In that regard, see *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424 (1978); *Commonwealth* v. *Beauchamp*, 413 Mass. 60 (1992); *Commonwealth* v. *Aquafresca*, 11 Mass. App. Ct. 975 (1981); *Commonwealth* v. *Araujo*, 41 Mass. App. Ct. 928 (1996); *Commonwealth* v. *Boland*, 43 Mass. App. Ct. 451 (1997); *Commonwealth* v. *Frias*, 53 Mass. App. Ct. 488 (2002). See also *Beauchamp* v. *Murphy*, 37 F.3d 700 (1st Cir. 1994), cert. denied, 514 U.S. 1019 (1995).

473, 477 (1992) ("The rationale of [*Brown* and *Manning*] is that a prisoner should not serve 'dead time' but should receive credit as matter of right for time served under an erroneous conviction"); *Piggott* v. *Commissioner of Correction*, 40 Mass. App. Ct. 678, 681 (1996) ("In evaluating the proper scope of relief, judges are guided by twin principles: prisoners should, where possible, not be required to serve 'dead time,' but have no right to bank time served against future offenses"). See also *Commonwealth* v. *Milton*, 427 Mass. 18, 24 (1998) ("In some circumstances, a defendant may be allowed to credit time in an unrelated case if necessary to prevent a defendant from serving 'dead time' ").

Gardner maintains, however, that the fact that he does not face the prospect of dead time is irrelevant in view of plain language in *Brown* and *Manning* to the effect that the commencement date of a "from and after" sentence, following the reversal of an anchor conviction, is to be deemed the date of its imposition, "not as matter of grace, but as of right." *Brown, supra* at 721. This is so, he argues, irrespective of whether the judge, in resentencing the prisoner after remand in connection with the invalidated anchor conviction, took into consideration the time already served. See *Manning, supra* at 395. The short answer is that we think Gardner reads such language shorn of context and burdens the passages with weight they cannot bear.

In each case, the court's evident and overriding concern was to assure that a prisoner receives credit as a matter of right for time served under an erroneous conviction. Where an anchor conviction is reversed and, upon remand, no further sentence is imposed, a prisoner would not receive credit for time served under the erroneous conviction unless that time were credited against the "from and after" sentence, at least from the date the "from and after" sentence was imposed. The court in *Brown*, decided in 1958, appears also to have been concerned that a prisoner at that time could not insist as matter of right that time served under an invalid conviction be credited against the sentence imposed after reprosecution and conviction; the court, accordingly, devised a means of assuring that time served be credited against the "from and after" sentence instead. The situation, however, had changed by the time *Manning* was decided.

In 1969, the United States Supreme Court made plain in *North Carolina* v. *Pearce*, 395 U.S. 711, 718-719 (1969), overruled on other grounds by *Alabama* v. *Smith*, 490 U.S. 794 (1989), that time served under a conviction later overturned on appeal must be credited against the sentence imposed after any retrial.[8] *Manning* went on to clarify that, while reviewing courts may not *presume* that credit for time served under an erroneous conviction had been given on remand, the result is otherwise where the sentencing judge discloses on the record that full credit was given; in such a case, the prisoner is not entitled to further relief, lest he reap double credit. See *Manning, supra* at 395.

Gardner's insistence that *Brown* and *Manning* establish a mechanically applicable commencement date for all "from and after" sentences following reversal of the conviction supporting an anchor sentence runs afoul of the admonition in *Brown* "not to adopt an overly legalistic approach in matters of this sort." *Brown, supra* at 722. Instead, the fundamental principle underlying decisions in this area is "fair treatment of the prisoner." *Commonwealth* v. *McLaughlin*, 431 Mass. 506, 515 (2000), quoting from *Commonwealth* v. *Grant*, 366 Mass. 272, 275 (1974). Where, as here, no statute controls, "we have been establishing guiding principles, case by case." *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 428 (1978). While in many situations fairness may require that time served pursuant to, and before reversal of, an earlier anchor sentence will be credited toward the subsequent "from and after" sentence by deeming the "from and after" sentence to have commenced upon its imposition, it is not self-evident that fairness will require this result in all situations. As in *Brown* and *Manning*, the convictions supporting Gardner's earlier anchor sentence were reversed but he soon pleaded guilty to charges arising from the same criminal episode. However, unlike *Brown* and *Manning*, Gardner was resentenced to a term of committed time, albeit shorter than his original anchor sentence. That new sentence expressly credited him with all time he had previously

---

[8]The time served under the original sentence can be characterized as presentence time. See 24 C.J.S. Criminal Law § 1576 (1989).

served. In such circumstances, we fail to see why the further relief Gardner seeks is appropriate.[9]

While we conclude that *Brown* and *Manning* do not require that the Massachusetts consecutive sentences be deemed to have commenced upon their imposition in 1989 and 1991, the question remains whether, *Brown* and *Manning* aside, the Massachusetts consecutive sentences nonetheless somehow commenced of necessity on November 19, 1992, upon the reversal of Gardner's 1989 Rhode Island convictions. Put another way, since the Massachusetts consecutive sentences, when imposed, were predicated upon the Rhode Island sentence Gardner was then "presently serving," and that specific sentence was subsequently set aside on November 19, 1992, while Gardner thereafter continued to remain incarcerated, did Gardner in fact that day begin serving the only sentences then extant, viz., the Massachusetts "from and after" sentences? We think he did not.

We observe first that, while incarcerated between November 19, 1992, and early 1993, Gardner was in the legal custody of Rhode Island,[10] where he was awaiting retrial on the indictments underlying the 1989 Rhode Island convictions. During that period he was in pretrial custody, for which he subsequently received full credit upon resentencing. Second, although the Rhode Island sentences imposed on resentencing were most certainly not the specific ones that the Massachusetts judges had in mind in 1989 and 1991 when imposing sentences to run from and after the Rhode Island sentence Gardner was "presently serving," we are disinclined to be "overly legalistic" in construing the sentencing scheme. *Brown, supra* at 722. Sentencing

---

[9]We recognize that, on resentencing, the Rhode Island judge apparently thought Gardner was then serving, albeit in Rhode Island, the Massachusetts "from and after" sentences and that the judge fashioned a Rhode Island sentence that would run concurrently with the Massachusetts sentences. We note that the Commonwealth did not participate in the Rhode Island proceeding and promptly thereafter notified Gardner that it did not share the judge's view. Gardner thus had ample opportunity to seek relief in Rhode Island. Contrast *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 428-429 (1978).

[10]Gardner was incarcerated in Massachusetts under the New England Interstate Corrections Compact in the period between November 19 and November 25, when he was returned to Rhode Island. See note 3, *supra.*

language, in any event, "is not always construed literally . . . if such a construction would lead to defeating the purpose of the sentencing scheme." *Wolcott, petitioner,* 32 Mass. App. Ct. at 476. This is particularly so where "there is no 'dead time' or other unfairness to the petitioner in upholding the consecutive structure of the sentencing scheme." *Id.* at 477.

Here, the Rhode Island reprosecution and resentencing were plainly for the same criminal episode for which Gardner stood convicted when he was sentenced in Massachusetts and for which, upon retrial in Rhode Island, he received a committed sentence. We think it clear that the Massachusetts judges in 1989 and 1991 devised a sentencing scheme that envisioned Gardner as serving committed time in Massachusetts after he completed serving time in Rhode Island for offenses of which he then stood convicted. Since the newly imposed Rhode Island sentence was functionally the substituted anchor sentence, we conclude that, in these circumstances, the Massachusetts "from and after" sentences had not commenced at all, let alone upon their imposition.

In view of our holding that Gardner's Massachusetts "from and after" sentences did not commence as a result of the 1992 reversal of the 1989 Rhode Island convictions, we conclude that Gardner has not established his entitlement to the declaratory and other relief he seeks. Accordingly, summary judgment should not have been entered for the plaintiff and the defendant's motion for summary judgment should have been allowed. The judgment is reversed and a new judgment is to enter for the defendant declaring that the plaintiff is not entitled to the relief he seeks.

*So ordered.*