NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

SJC-12364

COMMONWEALTH vs. MICHAEL WALTERS.

Bristol.     December 4, 2017. - April 12, 2018.

Present: Gants, C.J., Gaziano, Lowy, Cypher, & Kafker, JJ.

Practice, Criminal, Sentence. Moot Question.


Indictments found and returned in the Superior Court
Department on March 28, 2011.

Following review by this court, 472 Mass. 680 (2015), a
resentencing hearing was had before E. Susan Garsh, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Ethan C. Stiles for the defendant.
Roger L. Michel, Jr., Assistant District Attorney, for the
Commonwealth.


CYPHER, J. The defendant, Michael J. Walters, was

convicted by a jury in the Superior Court of stalking,

harassment, two counts of restraining order violations, and two

counts of perjury. While he was serving his State prison

sentence for stalking, that conviction was vacated by this court

because the evidence was insufficient.  Commonwealth v. Walters, 472 Mass. 680 (2015) (Walters I).  As a result, the defendant was resentenced on the remaining convictions.  At resentencing, the defendant requested that his perjury sentence be deemed "time served" because it was the only other sentence that could have been considered a State prison sentence.  Rather than granting the defendant's request, however, the trial judge vacated the stalking sentence, consistent with our opinion in Walters I, and imposed the remaining sentences nunc pro tunc to the date of his original sentence.  Consequently, the defendant served his sentences for criminal harassment and a restraining order violation -- crimes that normally carry a sentence to a house of correction -- in State prison.  The defendant appealed from his resentencing on the ground that the structure of his resentencing scheme was illegal.  Following the Appeals Court's dismissal of the defendant's case as moot, we granted further appellate review.  We affirm the decision of the resentencing judge.

Background.  1.  First trial and sentences.  On June 12, 2012, the defendant was convicted of stalking, G. L. c. 265, § 43 (a); criminal harassment, G. L. c. 265, § 43A (a); two counts of restraining order violations, G. L. c. 209A, § 7; and two counts of perjury, G. L. c. 268, § 1.  The trial judge sentenced the defendant to the following:  on the charge of

stalking, from three to four years in a State prison; on the charge of criminal harassment, two and one-half years in a house of correction, concurrent with the stalking sentence; on the charge of a restraining order violation (first count), two and one-half years in a house of correction, concurrent with the stalking sentence; on the charge of perjury (first count), from two to three years in a State prison on and after the stalking sentence; on the charge of a restraining order violation (second count), two and one-half years in a house of correction, suspended for five years with probation on and after all incarceration; and on the charge of perjury (second count), five years' probation on and after all incarceration. That day, the defendant's bail was revoked and he was transferred to a State prison, the Massachusetts Correctional Institution at Cedar Junction, where he began serving his stalking sentence, before being transferred to the Bay State Correctional Center[1] at Norfolk. In April, 2015, he was transferred to the North

---

[1] The Bay State Correctional Center at Norfolk was a small, general population, medium security State prison that stood on the grounds of the original dormitory buildings of the Massachusetts Correctional Institution at Norfolk. It was closed in December, 2015. A medium security facility holds inmates who may still pose a risk to security; however, they have demonstrated a willingness to comply with institutional rules and regulations. There are increased job and program opportunities at this level of security.

Central Correctional Institution at Gardner,[2] where he remained through resentencing and until he was released to begin probation.

2. Resentencing. On December 11, 2015, the stalking charge was vacated and dismissed, and the defendant was resentenced by the trial judge to the following: on the charge of criminal harassment, two and one-half years in a house of correction, nunc pro tunc to June 12, 2012; on the charge of a restraining order violation (first count), two and one-half years in a house of correction, nunc pro tunc to June 12, 2012, concurrent with the sentence for criminal harassment; on the charge of perjury (first count), from two to three years in a State prison on and after the criminal harassment sentence; on the charge of a restraining order violation (second count), two and one-half years in a house of correction, suspended for five years with probation on and after all incarceration; and on the charge of perjury (second count), five years' probation on and after all incarceration.

Discussion. 1. Mootness. The Commonwealth argues that the defendant's place of confinement is a moot issue because the defendant has already been released from prison. The defendant argues that the structure of his resentencing scheme ultimately

_____

[2] The North Central Correctional Institution at Gardner is a medium security State prison that houses over 1,000 inmates.

determines when his probation will end.  Therefore, had the resentencing judge granted his request -- that his perjury sentence be deemed time served with the criminal harassment and G. L. c. 209A violation sentences having run concurrently -- he would have been released from State prison on the date of his resentencing, December 11, 2015, after serving more than the maximum of his three-year sentence for perjury.[3]  Had the defendant been released on this date, his five-year probation period would end on December 11, 2020.[4]  However, because the resentencing judge denied the defendant's request and instead ordered that the entire sentencing scheme (minus the stalking sentence) be dated nunc pro tunc to June 12, 2012, the defendant was not released from prison until December 7, 2016.[5]  As a

---

[3] The defendant had served three years, five months, and twenty-nine days at the date of his resentencing.

[4] The defendant also argues that this time difference may be even greater based on "good time" earned.  We need not address the accuracy of his calculations in light of the result we reach because it is clear that his probation date would be affected regardless of any time earned.

[5] By the date of his resentencing, the defendant had been in State prison for more than three years.  Because the entire sentence was dated nunc pro tunc to June 12, 2012, the perjury sentence of from two to three years in State prison began approximately in December, 2014, after the two and one-half year sentences for criminal harassment and the restraining order violation (first count) had been served.  As a result, the defendant remained in State prison until December 7, 2016, when he was released to begin his probation.  He served a total of four years, five months, and twenty-five days in State prison.

result, the defendant's probation will not end until December 7, 2021.

An issue only becomes moot once a defendant would no longer be personally affected by the resulting decision.  See, e.g., Blake v. Massachusetts Parole Bd., 369 Mass. 701, 703 (1976) ("Ordinarily, litigation is considered moot when the party who claimed to be aggrieved ceases to have a personal stake in its outcome").  Because the defendant is currently serving the probation portion of his sentence, and the resentencing structure ultimately determines whether the defendant's probation ends in 2020 or 2021, the defendant has a stake in this court's decision.  Therefore, the issue is not moot.

2.  Resentencing.  The defendant argues that his sentence was excessive and incongruous with the applicable statutes because he was forced to serve State prison sentences for crimes that only carried house of correction sentences.  He also argues that his sentence was illegal because the resentencing judge did not properly apply our holding in Brown v. Commissioner of Correction, 336 Mass. 718 (1958), that, upon resentencing, all "from and after" sentences be dated nunc pro tunc to the original sentence.

Our review of criminal sentences is limited.  Commonwealth v. Coleman, 390 Mass. 797, 804 (1984).  This court will review a sentence only to determine if it is illegal or unconstitutional.

Commonwealth v. Molino, 411 Mass. 149, 155 (1991). See Commonwealth v. White, 436 Mass. 340, 345 (2002) (applying test of illegality to determine whether resentencing scheme should be vacated).

"An 'illegal sentence' is one that is in excess of the punishment prescribed by the relevant statutory provision or in some way contrary to the applicable statute," Commonwealth v. Layne, 21 Mass. App. Ct. 17, 19 (1985), or is "premised on a major misunderstanding by the sentencing judge as to the legal bounds of his authority," Commonwealth v. McGuinness, 421 Mass. 472, 475 (1995). See Goetzendanner v. Superintendent, Mass. Correctional Inst., Norfolk, 71 Mass. App. Ct. 533, 537 (2008) (defendant's sentences were within scope of permissible sentences under applicable statutes and were therefore not illegal).

A sentence is "in excess" of the prescribed punishment if the defendant is sentenced to any length of time beyond the maximum permitted by the violated statute. See Commonwealth v. McGhee, 472 Mass. 405, 427 (2015) (sentence of up to five years and one day was illegal because it exceeded maximum sentence of five years allowed by applicable statute). A sentence that contradicts the statutory provision in question, even where those contradictions favor the defendant, is also illegal. See Commonwealth v. Selavka, 469 Mass. 502, 505 (2014) (sentence

illegal where sentencing judge failed to impose global positioning system monitoring on defendant as required by statute); Commonwealth v. Cowan, 422 Mass. 546, 548 (1996) (defendant's sentence was illegal because statute did not permit house arrest with electronic monitoring device to be substituted for incarceration in facility).

The defendant argues that his sentence was excessive because, after resentencing, he served his sentence for a misdemeanor in a State prison. He argues that a State prison is a place of more serious punishment than a house of correction, and he was therefore confined with more serious offenders. Similarly, the defendant asserts that his sentence is contrary to G. L. c. 265, § 43A (criminal harassment statute), because the statute mandates that the defendant be sentenced to a house of correction -- in addition to or in lieu of a fine. However, serving the entirety of his house of correction sentence in a State prison was not illegal because it did not exceed the punishment prescribed by nor was it contrary to the violated statue. See McGuinness, 421 Mass. at 475 (sentence permitted by statutory law for offense committed not illegal).

The second reason an imposed sentence can be deemed illegal is if the resentencing judge premises that sentence on an error or misunderstanding of law. See, e.g., Commonwealth v. Azar, 444 Mass 72, 78-79 (2005) ("split sentence" was legal because

law making it illegal did not take effect until after murder conviction); Commonwealth v. White, 436 Mass 340, 345 (2002) (sentence was illegal because judge mistakenly believed she lacked authority to consider good conduct information offered).

The defendant argues that his sentence was illegal because the resentencing judge did not properly apply this court's holding in Brown, 336 Mass. 718. In Brown, the defendant was convicted on three indictments in Middlesex County and five indictments in Suffolk County. Id. at 719. The sentences for the Suffolk convictions were to commence "from and after" the sentences for the Middlesex convictions. Id. All Middlesex convictions were subsequently set aside. Id. The Commissioner of Correction argued that because the Middlesex judgments were "voidable" and not "void," they were in "full force and effect" until they were reversed, and the defendant's Suffolk sentences should begin on the date of the reversal. Id. at 720. We held that regardless of whether the Middlesex convictions were "void or voidable," the Suffolk sentences should be moved forward and made to run from the date of the imposition of the reversed convictions and not from the date of reversal. Id. at 723. There, the defendant would have served "dead time"[6] if his

---

[6] "Dead time" in this context is "time served under an invalid sentence for which no credit is given." Gardner v. Commissioner of Correction, 56 Mass. App. Ct. 31, 34 n.5 (2002).

remaining sentences had not been determined to be nunc pro tunc to the original sentencing date.  Id. at 721.

The defendant argues that, according to our holding in Brown, all sentences deemed to commence "from and after" an earlier invalid sentence must be held to commence when both sentences were originally imposed.  However, the defendant's reading of Brown is too broad.  Our holding in Brown is limited to cases in which the defendant would have served dead time. Gardner v. Commissioner of Correction, 56 Mass. App. Ct. 31, 34-35 (2002) (Brown and Manning v. Superintendent, Mass. Correctional Inst., Norfolk, 372 Mass. 387 [1977], did not "establish a bright-line rule" that could be applied to all "from and after" sentences that lose their anchor sentence). See Wolcott, petitioner, 32 Mass. App. Ct. 473, 477 (1992) ("the rationale of [Brown and Manning] is that a prisoner should not serve 'dead time' but should receive credit as matter of right for time served under an erroneous conviction").  In Brown, we emphasized that the avoidance of dead time was crucial to the decision, saying, "We think this is the better and more humane view, for only in this way can a prisoner receive credit, not as a matter of grace, but as of right, for time served under an erroneous conviction."  Brown, 336 Mass. at 721.  See Manning, supra at 396-397 ("A prisoner should not be penalized or burdened by denial of a credit simply because he had

successfully appealed [from] a criminal conviction. . . . The result we reach neutralizes the effect of the erroneous . . . sentences on the valid . . . sentence, and causes the plaintiff to serve no more and no less than he should pursuant to the [valid] sentence").

Here, the defendant does not face the potential for dead time because only one of his original convictions was vacated. He was therefore serving the concurrent sentences on two standing convictions until the "from and after" sentence for perjury began. Similar to the defendant in Gardner, the defendant here was credited for all the time he had served, and Brown is not controlling in this instance.

A dependent relationship exists between the different components of a sentencing scheme. See, e.g., Commonwealth v. Parrillo, 468 Mass. 318, 321 (2014) (defendant's community parole supervision for life [CPSL] sentence may have played part in judge's over-all concept of sentencing); Commonwealth v. Cumming, 466 Mass. 467, 472 (2013) ("It would not be possible to sever the CPSL requirement without fundamentally altering that judge's original intent"); Commonwealth v. Leggett, 82 Mass. App. Ct. 730, 735 (2012), citing Commonwealth v. LeBeau, 451 Mass. 244, 245, 263 (2008) ("The components of the scheme work in combination, not isolation. . . . The subtraction of one or more of the scheme's interdependent elements may disrupt its

intended proportions and purposes, and warrant its entire reconstruction within statutory limits by the sentencing judge or a successor").

Although an anchor sentence may have been vacated and therefore no longer functions as a punishment for the defendant, the anchor sentence still provides insight regarding the original sentencing judge's intent when punishing multiple crimes.  Wolcott, petitioner, 32 Mass. App. Ct. at 477, quoting Watson v. United States, 174 F.2d 253, 254 (D.C. Cir. 1948) ("so-called 'anchor sentences' if reversed are not effective as an agency of punishment," and "they may be considered 'to evidence the intention of the court in respect of connected sentences'").  In cases where a sentencing scheme is truncated by a decision to vacate a conviction, "the literal language of the trial judge is less significant than the entire sentencing structure as a whole."  Wolcott, petitioner, supra at 478.

In the instant case, we have the benefit of analyzing both the anchor sentence and the intention of the judge.  The sentencing structure distinguished between the crimes that are victim-centered and the two convictions of perjury; the victim-centered sentences ran concurrently, and once they were served, the perjury sentences were to begin "from and after."  Further, the judge voiced her intention of differentiating between the victim-centered crimes of stalking, harassment, and G. L.

c. 209A violations and the perjury crimes.[7]  Once the stalking conviction was overturned, the judge simply sought to maintain this distinction by denying the defendant's request to deem the perjury sentence as time served.  The judge carefully considered the impact of the sentencing scheme when she chose to impose the entire sentence nunc pro tunc as if it had been imposed on June 12, 2012, and it was within her discretion to do so.

The judge had discretion to determine the resentencing structure as long as she did not add additional time to the original, lawfully imposed sentence.  See Cumming, 466 Mass. at 473-474 (judge may not restructure sentence in way that increases aggregate punishment imposed under original sentence).  Under the defendant's original sentencing scheme, he would have served from five to seven years of incarceration and five years of probation after all incarceration.  After resentencing, the

---

[7] During the resentencing hearing, the judge said:  "The [c]ourt in doing its sentencing structure grouped, in effect, stalking, harassment, and [G. L. c.] 209A because they related to acts committed with domestic abuse, and the [c]ourt imposed sentences on those that were concurrent.  The [c]ourt intentionally did not impose a perjury sentence that was concurrent because the [c]ourt deems that to be a crime different in nature and requiring independent punishment, and therefore, imposed an on and after sentence on that."

defendant served approximately four and one-half years of incarceration.[8]

The defendant's resentencing scheme is neither illegal nor unconstitutional; therefore, the decision of the Superior Court judge is affirmed.

<u>So ordered</u>.

---

[8] The defendant is currently serving five years of probation.