NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-761

COMMONWEALTH

vs.

SEAN JANOSKY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this consolidated appeal, the defendant challenges (1) a judge's order denying his motion pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), to correct a sentence that was imposed after a Superior Court jury convicted him of armed robbery with a firearm and he pleaded guilty to being a second or subsequent offender;[1] and (2) the same judge's order denying, without an evidentiary hearing, his motion for new trial based on developments in eyewitness identification

---

[1] The jury also convicted the defendant of unlawfully carrying a firearm and he pleaded guilty to being an armed career criminal. The trial judge subsequently dismissed the firearm conviction on the ground that it was a lesser included offense, and thus duplicative, of the armed career criminal conviction. The jury found the defendant not guilty of armed assault with intent to murder.

science since the defendant's trial and conviction in 2002.[2] Concluding that the motion judge did not err by denying the defendant's motion to correct an illegal sentence because the defendant's sentence was not illegal, and discerning no error or abuse of discretion in the judge's denial of the defendant's motion for new trial, we affirm.

Background.  On the morning of December 18, 1999, the victim, Ronald Paul, was robbed by two men of diamonds and jewelry at his jewelry business in Peabody.  One of the men, who was later identified as the defendant, had called the victim earlier in the week to schedule a meeting, purportedly to buy a diamond.  The defendant also had been at the victim's office five days earlier, spoken briefly with the victim's wife, Talya Paul (Talya),[3] who was the receptionist, and was observed by the victim on the office security camera.  Talya noticed that the defendant was holding a briefcase and wearing a sweater and three-quarter length coat.  His hair was gelled and sticking "straight up."  He had blue eyes and white skin.  Her

---

[2] The defendant also claimed ineffective assistance of his trial counsel and first appellate counsel but does not make that argument on appeal.  Accordingly, we need not address it here.

[3] Because the victim and his wife share a surname, we use her first name to avoid confusion.

interaction with the defendant that day lasted twenty to thirty seconds.

When the defendant arrived on the morning of the robbery, he seated himself in front of the victim's desk. The victim sat at his desk, with his open safe behind him. The other man, later identified as Mark Bova, sat on a couch by the wall. The victim and the defendant had a twenty-minute conversation about the defendant's potential diamond purchase. The victim began to show the defendant some diamonds, but became nervous and told the defendant that he did not believe he had any suitable diamonds. The defendant then pulled out a gun, stood, and pointed the gun at the victim's chest, about six to eight inches away. In response, the victim stood, raised his hands, and screamed. The victim's hand bumped the defendant's arm and the gun went off. After a brief struggle with the defendant, the victim ran to a downstairs office and yelled that he had been robbed and to call the police. He then hid behind a tree outside and watched as the defendant and Bova left the building and got in a car driven by a third man.[4] When the victim

_____

[4] Police officers believed the third man to be John Pedoto, Jr., but were unable to locate any physical evidence linking Pedoto to the crime. Their questioning of Pedoto yielded the defendant's name as the armed participant in the robbery. Pedoto died prior to the case going to trial. See Commonwealth v. Janofsky, 68 Mass. App. Ct. 1112 (2007).

3

eventually returned to his office with the police, he noticed a "hole" in his safe. He ultimately determined that $30,000 to $40,000 in loose diamonds and finished jewelry had been stolen.

The victim described the defendant as having short, very blonde hair and a pale face. He was wearing a brown ribbed turtleneck that came up underneath his chin and an outer coat. He had light-colored, possibly blue, eyes, his eyebrows were a darker brown than his hair, and he was wearing a Swiss Army watch. The victim described Bova as having black hair, combed but messy, and wearing a black leather bomber-style jacket. Bova never became involved in the conversation between the victim and the defendant, but instead alternated between watching the victim and looking down the hallway toward the vestibule.

About two weeks after the robbery, on January 3, 2000, the victim identified the defendant from a photographic array. Talya viewed the same array but was unable to identify anyone. On January 5, 2000, the police arrested the defendant and obtained a search warrant for his residence, where they recovered a brown ribbed turtleneck sweater. The next day, the victim identified the sweater as the one worn by the robber with the gun. On February 15, 2000, Talya identified the defendant from a different photo array as the person she had seen at the

4

office five days before the robbery.  Finally, on March 10, 2000, the victim and Talya participated in a lineup identification procedure.  The victim identified the defendant, but Talya selected someone else.

In support of his motion for new trial, the defendant submitted a lengthy and detailed affidavit from an expert on eyewitness identification.  The expert discussed the unreliability of eyewitness testimony and opined about the suggestiveness of the photo arrays and lineups shown to the victim and Talya.[5]

Discussion.  1.  The motion to correct illegal sentence. The defendant first contends that he was sentenced illegally by the trial judge and that a different judge (motion judge) erred by denying the defendant's motion more than twenty-two years later to correct his "illegal" thirty to forty year State prison sentence.  We disagree.

Massachusetts Rule of Criminal Procedure 30 (a) provides that a prisoner may "file a written motion requesting the trial judge to . . . correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of

---

[5] The defendant's expert opined about the reliability of the identification of the sweater, but the defendant does not press that issue on appeal, and therefore we do not address it.

the Commonwealth of Massachusetts."  "An illegal sentence is one that is in excess of the punishment prescribed by the relevant statutory provision or in some way contrary to the applicable statute" (quotation and citation omitted).  Commonwealth v. Walters, 479 Mass. 277, 280 (2018).

Here, the defendant argues that his sentence was illegal because (1) he was not convicted at trial of armed robbery with a firearm and thus could not be sentenced as a subsequent offender for that crime; and (2) the predicate offense for his subsequent offender plea did not qualify as a prior conviction of armed robbery with a firearm.  However, these are challenges to the validity of the defendant's conviction as a subsequent offender, not the legality of the concomitant sentences.[6]

Although the armed robbery statute mandates minimum sentences based on certain predicate acts, a judge may impose on any armed robber a sentence of "imprisonment . . . for life or for any term of years."  G. L. c. 265, § 17.[7]  Therefore, the

---

[6] The distinction we draw here is neither trivial nor pedantic.  The proper course for such a challenge would have been for the defendant to bring his claim in a motion to withdraw his guilty plea, so that the factual record could have been developed regarding whether "it appears that justice may not have been done."  See Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).

[7] Pursuant to G. L. c. 265, § 17, "Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject

6

trial judge's sentence of from thirty to forty years in State prison (well above any minimum sentence imposed for armed robbery under any of the sentences of G. L. c. 265, § 17) was a lawful sentence.  The motion judge did not err by denying the defendant's motion to correct this sentence.

2.  The motion for new trial.  a.  Developments in eyewitness identification science.  The defendant argues that he should have been granted a new trial because advances since 2002 in scientific knowledge concerning the reliability of eyewitness testimony cast real doubt on his conviction.

"[W]e review the denial of a motion for a new trial for 'a significant error of law or other abuse of discretion.'" Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 592 (2022), quoting Commonwealth v. Duart, 477 Mass. 630, 634 (2017), cert. denied, 584 U.S. 938 (2018).  A judge "may grant a new trial at any time if it appears that justice may not have been done."

_____

of larceny shall be punished by imprisonment in the state prison for life or for any term of years; provided, however, that any person who commits any offence described herein while masked or disguised or while having his features artificially distorted shall, for the first offence be sentenced to imprisonment for not less than five years and for any subsequent offence for not less than ten years.  Whoever commits any offense described herein while armed with a firearm, shotgun, rifle, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than five years.  Any person who commits a subsequent offense while armed with a firearm, shotgun, rifle, machine gun or assault weapon shall be punished by imprisonment in the state prison for not less than [fifteen] years."

7

Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001). This allows a judge, "in rare cases . . . to look beyond the specific, individual reasons for granting a new trial to consider how a number of factors act in concert to cause a substantial risk of a miscarriage of justice and therefore warrant the granting of a new trial." Commonwealth v. Rosario, 477 Mass. 69, 77-78 (2017).

The defendant contends, based on his expert's affidavit, that there were a number of factors that "undermined the reliability of the identification procedures in this case." He appears to argue that developments in eyewitness science since the trial in this case make the identification issues cited by his expert "newly discovered evidence." See Commonwealth v. Mercado, 495 Mass 763, 766-767 (2025).

We agree with the motion judge that the Commonwealth's case was sufficiently strong that any such advances in scientific knowledge would not have had a meaningful impact on the jury's decision-making in this case. See Commonwealth v. Eagles, 491 Mass. 210, 215-217 (2023) (motion for new trial properly denied where scientific advances would likely have made inculpatory evidence inadmissible at trial, but that evidence was not a real factor in jury's calculation of evidence). The victim had ample opportunity to observe the defendant before the crime, as the

8

two spoke for about twenty minutes with only the width of the victim's desk separating them. He also watched the defendant leave the building and get into a car after the crime. The victim provided a detailed description of the defendant and the getaway vehicle. He then unequivocally identified the defendant in the first photo array a couple weeks after the robbery and identified him again in a lineup several months later. The victim's identification of the defendant as the armed robber was supported by other evidence, including (1) a scrap of paper found in Pedoto's car with the name "Shawn" and a phone number registered to "Ann Janosky" at the defendant's residence; (2) the fact that a brown ribbed sweater consistent with the one worn by the armed robber was found at the defendant's residence; and (3) Talya's identification of defendant in the second photo array.

We are not persuaded by the defendant's argument that the use of a firearm in this case impacted the credibility of the victim's identification. The defendant's expert opined that, "'weapon focus' can . . . impair a witness's ability to make a reliable identification and describe what the culprit looks like if the crime is short in duration." However, as discussed, the victim in this case interacted with the defendant for a significant period of time prior to the "short duration" of the

9

robbery after the introduction of the firearm. See Mercado, 495 Mass. at 767-768 (research on stranger eyewitness identification inapplicable to witness who spent time with defendant prior to shooting). Finally, the victim and Talya were cross-examined about their observations of the defendant, the descriptions they gave to the police, and the quality of the identification procedures utilized by police; and trial counsel challenged the identification procedures and the reliability of the identifications during his closing argument. See Commonwealth v. Ayala, 481 Mass. 46, 64 (2018) (new trial not warranted even in absence of eyewitness identification expert testimony where defense counsel vigorously cross-examined witness regarding reliability of identification and argued unreliability of identification in closing). We thus discern no error in the motion judge's conclusion that a new trial not warranted even in absence of eyewitness identification expert testimony.

b. Denial of request for evidentiary hearing. "Whether to hold an evidentiary hearing is a decision squarely within the judge's discretion, and we review the decision for an abuse of discretion." Commonwealth v. Barry, 481 Mass. 388, 401 (2019). A judge may properly deny a motion for a new trial without an evidentiary hearing "if no substantial issue is raised by the motion or affidavits." Mass. R. Crim. P. 30 (c) (3), as

10

appearing in 435 Mass. 1501 (2001).  "In determining whether a substantial issue meriting an evidentiary hearing under rule 30 has been raised, we look not only at the seriousness of the issues asserted, but also to the adequacy of the defendant's showing on the issue raised" (quotation and citation omitted).  Commonwealth v. Holbrook, 482 Mass. 596, 606 (2019).  "A judge may also consider whether holding a hearing will add anything to the information that has been presented in the motion and affidavits."  Commonwealth v. Goodreau, 442 Mass. 341, 348 (2004).

Here, the defendant's motion for a new trial was supported by a lengthy and detailed expert affidavit that included citations to numerous studies and learned treatises.  The motion judge found that there was nothing raised in the expert affidavit that cast doubt on the identifications or their impact at trial, particularly where the witnesses were cross-examined on the issue and trial counsel forcefully argued the unreliability of the identifications.  We discern no abuse of discretion in the judge's further determination that "[t]he materials necessary . . . to make an informed decision

11

. . . are contained within the written submissions of the parties and the attached exhibits."

> Order denying motion for new trial affirmed.
>
> Order denying motion to correct illegal sentence affirmed.
>
> By the Court (Blake, C.J., Ditkoff & Brennan, JJ.[8]),
>
> *Paul Little*
>
> Clerk

Entered:  July 29, 2025.

---

[8] The panelists are listed in order of seniority.