COMMONWEALTH *vs.* MICHAEL BOLAND.

No. 96-P-1912.

Essex. May 20, 1997. - September 2, 1997.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Practice, Criminal,* Sentence. *Imprisonment,* Credit for time served.

A criminal defendant, who was arrested and held in a foreign jurisdiction as a
   fugitive from justice in Massachusetts and simultaneously held on unrelated
   charges in that jurisdiction which were later dismissed, was entitled to
   postconviction relief under Mass.R.Crim.P. 30(a) to correct his sentence by
   crediting him for the time, attributable to the Massachusetts charges as the
   foreign charges were a nullity, spent in confinement in the foreign jurisdic-
   tion before his return to Massachusetts. [453-456]

INDICTMENT found and returned in the Superior Court Depart-
ment on September 25, 1991.

The case was tried before *Charles M. Grabau,* J., and a mo-
tion for postconviction relief was heard by him.

*Edward E. Eliot* for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Com-
monwealth.

GILLERMAN, J. The defendant appeals from the denial of his
motion under Mass.R.Crim.P. 30(a), 378 Mass. 900 (1979),
seeking postconviction relief in order to correct his sentence by
obtaining credit for time spent in confinement in Florida prior
to his return to Massachusetts. The material facts, as stipulated
by the parties or found by the motion judge, are these.

On September 18, 1991, the defendant was arrested in Florida
as a fugitive from justice in Massachusetts.[1] The underlying of-
fense leading to this arrest was the Massachusetts charge for

---

[1]The defendant was a "fugitive from justice" only in the sense that he was
out of State when the Massachusetts warrant against him was issued. The
defendant did not flee Massachusetts after arrest, and he has not been defaulted
on a court appearance in this Commonwealth.

which Boland is currently serving a sentence. The defendant posted bail (apparently on the same day he was arrested), which was set at $10,000, and was released by the Florida authorities.

On September 25, 1991, the defendant, while on bail, was arrested by the State of Florida on a separate criminal complaint charging exploitation of an elderly person. He was arraigned on this Florida charge and bail was set for $500,000. The defendant did not post bail.

The parties stipulated, and the judge found that, on September 30, 1991,[2] the defendant was "returned to Florida custody on the [Massachusetts] fugitive from justice charge." The defendant was no longer free on the $10,000 bail, and the bail was returned to the surety. At the same time, the defendant was being held on the Florida charge.

On March 18, 1992, bail for the Florida charge regarding the exploitation of an elderly person was reduced to $25,000, but on the same day a Governor's warrant for the extradition of the defendant, issued by Governor Lawton Chiles upon the application of the Governor of Massachusetts, was executed on the defendant at the Volusia County branch jail. The police report recites the service of the warrant on the defendant in the county jail, following which the words "No Bond" appear in the report.

The parties stipulated that the "Florida authorities did not surrender the defendant to the Governor's [w]arrant until the Florida charges were resolved." That stipulation was incorporated in the judge's findings.

On September 8, 1992, the trial court in Florida dismissed the charge of exploitation of an elderly person,[3] and on September 22, 1992, the defendant was returned to the Commonwealth.

---

[2]There is no stipulation and no finding regarding the events between September 25, 1991, and September 30, 1991.

[3]The stipulation of the parties is that "[o]n September 8, 1992, the Trial Court in Florida dismissed one of the felony indictments which alleged an exploitation of an elderly person." In 1994, the Supreme Court of Florida ruled that the Florida statute regarding exploitation of an elderly person was unconstitutional. See Cuda v. State, 639 So. 2d 22 (Fla. 1994). The 1992 dismissal of the exploitation charge in this case ·may have anticipated that result.

The Superior Court judge in this case found that there was a second felony charge for grand theft brought by the Florida authorities. It appears to involve the same events which gave rise to the exploitation charge. In any event the Commonwealth acknowledges that this second felony charge was dismissed at the same time as the exploitation charge.

The defendant was convicted in Massachusetts on the arson charges on June 17, 1993. He was sentenced to the maximum term of from eight to ten years, and was given jail credit for the period from September 8, 1992, to June 17, 1993.

After losing his direct appeal to this court on February 14, 1996, the defendant filed the motion which is the subject of this appeal. In those proceedings the defendant sought credit against his sentence for the period prior to September 8, 1992.

To summarize: the defendant was first confined, in Florida, on September 25, 1991, on Florida charges. He was held in Florida on those charges until the charges were dismissed on September 8, 1992. Meanwhile, beginning September 30, 1991, the defendant was held in Florida on the Massachusetts fugitive from justice charge. On March 18, 1992, a Governor's warrant for the defendant's extradition to Massachusetts was signed by the Florida Governor and served on the defendant, but he was not returned to Massachusetts until September 22, 1992.

The defendant claims he is entitled to jail time credit prior to September 8, 1992, the date the Florida charges were dismissed. This claim presents the question whether the defendant should be credited with time served in a foreign jurisdiction, where the defendant was simultaneously being held as a fugitive from justice from Massachusetts for which he was later convicted and incarcerated and on unrelated foreign charges later dismissed.

*Discussion.* General Laws c. 279, § 33A,[4] provides that the sentencing judge must credit prisoners with time served in confinement prior to sentence, while awaiting trial. See also G. L. c. 127, § 129B.[5]

It has been frequently stated that these statutes are "not to be

---

[4]General Laws c. 279, § 33A, as inserted by St. 1961, c. 75, provides:

"The court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial."

[5]General Laws c. 127, § 129B, as inserted by St. 1961, c. 74, provides, in pertinent part:

"The sentence of any prisoner in any correctional institution of the commonwealth or in any house of correction or jail, who was held in

examined in an overly technical manner but [are] rather to be read 'against the backdrop of fair treatment of the prisoner.' " *Commonwealth* v. *Foley,* 17 Mass. App. Ct. 238, 243 (1983), quoting from *Commonwealth* v. *Grant,* 366 Mass. 272, 275 (1974). See *Brown* v. *Commissioner of Correction,* 336 Mass. 718, 722 (1958); *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk,* 372 Mass. 387, 394 (1977). Even where the statutes do not apply, the Legislature has indicated that "a prisoner is entitled to credit for the time he has spent in prison." *Commonwealth* v. *Foley, supra* at 243, quoting from *Commonwealth* v. *Manning, supra* at 392. "[F]airness is the appropriate measure in determining whether and to what extent" the defendant should be given credit for time spent in custody. *Chalifoux* v. *Commissioner of Correction,* 375 Mass. 424, 427 (1978).

The discussion of the fairness issue in *Commonwealth* v. *Aquafresca,* 11 Mass. App. Ct. 975, 976-977 (1981), is helpful here. In *Aquafresca,* the defendant was arrested in Oregon on an outstanding Federal interstate fugitive from justice warrant based on Massachusetts charges, but at the same time the arresting officer "indicated" that the defendant "was wanted" by the Federal Bureau of Investigation for several unrelated bank robberies he had committed on the West Coast. *Id.* at 975. The defendant was subsequently indicted and pleaded guilty to the Federal offense of bank robbery. He was returned to Massachusetts on October 10, 1974.

This court awarded credit to the defendant for the time he spent in jail in Oregon between his arrest on the fugitive from justice warrant and his *indictment* on the Federal offense to which he later pleaded guilty. The court reasoned that "[h]olding him during that period at least in some measure is attributable to his Massachusetts [charges]." *Ibid.* We declined to give the defendant credit for the period beginning with his indictment in Oregon on the Federal offense except to the extent of the inevitable delay associated with the procedure of returning the defendant to Massachusetts on the fugitive from justice warrant — a delay we estimated to be one month. The case was remanded to the Superior Court to verify this estimate.

custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial . . . ."

In the course of our opinion we discussed two cases: *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, and *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424. In *Manning*, the defendant was given credit for time served on unrelated charges because those charges were set aside on appeal. In *Chalifoux*, credit was given for jail time in a foreign jurisdiction (on a sentence stated to be concurrent with the Massachusetts sentence) that resulted from the refusal of Massachusetts to accept the return of the prisoner because of overcrowding in Massachusetts prisons. We said in *Aquafresca, supra* at 977, that both *Manning* and *Chalifoux* presented "special considerations of fairness" not applicable to Aquafresca.

We held in *Aquafresca* that fairness did not require us to give credit for jail time in Oregon — after indictment and prior to the commencement of the Federal sentence — which was the result "solely" of the crimes which led to that sentence. Implicit in our decision in *Aquafresca* was the fact that were we to give credit for jail time in Oregon *after* Aquafresca's indictment on the Federal charge, Aquafresca would likely receive double credit: once by the Federal authorities in Oregon and once by Massachusetts. (We observed in *Commonwealth* v. *Foley*, 17 Mass. App. Ct. at 244, that "the only cases since the passage of G. L. c. 279, § 33A, . . . which deny credit for unrelated offenses are cases where double credit has been sought.")

The double credit problem inherent in *Aquafresca* disappears, as it did in *Manning*, where the unrelated charges are either dismissed at the trial level or later set aside on appeal. In the case before us, the unrelated charges under which the defendant was held in Florida were dismissed at the trial level. However, there is a factual difference between this case and *Manning*, namely, in this case the unrelated charges, later dismissed, were pending in a foreign jurisdiction. But, as a result of our decision in *Aquafresca*, that difference is of no consequence. In *Aquafresca*, we allowed credit for the period beginning with the date that Aquafresca was confined in Oregon on the fugitive warrant and ending on the date of his indictment on the Federal charge — that is, ending on the date when, because of his subsequent conviction, he would have received jail time credit from the Federal authorities in Oregon. Had there been no intervening Federal charge and a conviction on the charge, we would have merely extended the period of credit to the time served in Oregon on the fugitive warrant.

It follows from our decision in *Aquafresca* that the defendant in this case is entitled to jail time credit beginning September 30, 1991 (when the defendant was placed in Florida custody on the fugitive warrant) to September 8, 1992 (the date the Florida charges were dismissed, and the commencement of the period of credit previously awarded by the judge). Because the Florida charges were dismissed, they must be deemed to be a nullity, as in *Manning*. Allowing the credit does not create the problem of double credit, and it recognizes the desired goal of eliminating dead jail time, even when it occurs in a foreign jurisdiction, so long as the confinement in the foreign jurisdiction is attributable to Massachusetts charges on which, as here, the defendant was later convicted and incarcerated.

The denial of the defendant's motion to correct his sentence is reversed. The defendant shall receive additional jail time credit for the period beginning September 30, 1991, and ending September 8, 1992, the date of the commencement of jail time credit previously allowed.

*So ordered.*