Commonwealth *vs.* Eric Morasse.

Essex. January 3, 2006. - February 21, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Sentence, Mittimus, Probation. *Statute,* Construction. *Words,* "In confinement."

A criminal defendant's conditions of pretrial probation — confinement to his home while being monitored by way of an electric bracelet — were not the equivalent of "confinement" for purposes of G. L. c. 279, § 33A; accordingly, the sentencing judge properly denied the defendant's motion to correct the mittimus to credit the defendant for the time spent under "house arrest." [115-122]

Indictments found and returned in the Superior Court Department on July 7, 1999.

A motion to correct the mittimus, filed on December 8, 2003, was heard by *Diane M. Kottmyer,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Paula Finley Mangum* for the defendant.

*Marcia H. Slingerland,* Assistant District Attorney, for the Commonwealth.

Sosman, J. The defendant, after pleading guilty and being sentenced to State prison, appeals from the denial of his motion to correct the mittimus, contending that he was not given proper credit for days spent "in confinement prior to such sentence awaiting and during trial." G. L. c. 279, § 33A. Prior to his change of plea and sentencing, the defendant had been released on bail, subject to pretrial probation conditions, including the requirement that he remain confined to his home and monitored by way of an electronic bracelet. The defendant argues that such "house arrest" qualifies as a form of "confinement" under the statute, and that he therefore should be deemed to have served a portion of his sentence based on the number of days

that he was subject to home "confinement." We transferred the case to this court on our own motion. For the following reasons, we conclude that the defendant's conditions of pretrial probation were not the equivalent of "confinement" for purposes of G. L. c. 279, § 33A, and we affirm the denial of the defendant's motion to correct the mittimus.

1. *Background.* The defendant was arrested on May 31, 1999, following an incident in which he attacked various people with a sword. The defendant was allegedly in an alcohol-induced blackout at the time. The following day, the defendant was charged in the District Court and, pursuant to G. L. c. 123, § 35, committed to Bridgewater State Hospital for a period of thirty days. On July 2, the defendant was returned to court and released on pretrial probation pursuant to G. L. c. 276, § 87. One of the conditions of pretrial probation was that the defendant be subject to electronic monitoring. The day after his release, the defendant was hospitalized at Bayridge Hospital in the wake of an apparent suicide attempt. That period of hospitalization lasted almost two months.

On July 7, 1999, the defendant was indicted on charges of armed assault with intent to maim, assault and battery by means of a dangerous weapon, five counts of assault by means of a dangerous weapon, and four counts of assault and battery stemming from the May 31 incident. A judge in the Superior Court set the same bail and imposed the same pretrial probation conditions as those set and imposed in the District Court. On September 2, 1999, the defendant was committed to Tewksbury State Hospital for an assessment of his competency to stand trial. G. L. c. 123, § 15 (*b*). That order of commitment was extended on September 22, and the defendant remained at Tewksbury State Hospital for a total of forty-one days.[1] On his release from commitment, the defendant remained under the supervision of the probation department and subject to monitoring by way of an electronic bracelet. The probationary conditions were modified for a three week period in November, 1999, to allow the defendant to attend a daily treatment program. He was also allowed to remove the monitoring bracelet on one occasion for purposes of undergoing medical testing.

---

[1]The defendant was ultimately found competent to stand trial.

On September 9, 2002, the day trial was scheduled to commence, the defendant pleaded guilty to all of the indictments. He remained out on bail, subject to the same conditions of probation, until his sentencing on November 6, 2002. The judge sentenced the defendant to concurrent terms of from four to six years in a State prison on the indictment charging armed assault with intent to maim and one of the counts of assault and battery by means of a dangerous weapon, to be followed by concurrent terms of probation on the other counts of assault and battery by means of a dangerous weapon.[2] The judge determined that the defendant was entitled to thirty-one days sentence credit pursuant to G. L. c. 279, § 33A.[3] By letter dated November 6, 2002, defense counsel requested that the mittimus be amended to give the defendant credit for the time spent at Bayridge Hospital and Tewksbury State Hospital (for a total of ninety-eight days additional credit). Treating the letter as a motion to amend the mittimus, the judge allowed the motion and ordered that the mittimus be amended to give the defendant those additional days of credit.

On December 8, 2003, the defendant filed a further motion to correct the mittimus, contending that he had been under "house arrest on pretrial probation," unable to leave his home except for "medical appointments or visits with his attorney and court appearances," from August 5, 1999, until his sentencing on November 6, 2002.[4] Claiming that these conditions were "equivalent to incarceration," he asked the judge to give him credit for that time and to correct the mittimus accordingly. The motion was denied, and the present appeal followed.

2. *Discussion.* Pursuant to G. L. c. 279, § 33A, a judge imposing a sentence of incarceration "shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in

---

[2]The remaining indictment containing four counts of assault and battery was filed with the defendant's consent.

[3]These credits apparently correspond to the number of days that the defendant was in custody from the time of his arrest through his subsequent commitment at Bridgewater State Hospital.

[4]During portions of that time, the defendant had been hospitalized at Bayridge Hospital and Tewksbury State Hospital. He had already been given sentencing credit for those days of hospitalization.

confinement prior to such sentence awaiting and during trial." In the event that the court fails to accord those days of credit at the time of sentencing, G. L. c. 127, § 129B, provides that the sentence of any prisoner "who was held in custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial." Thus, under either statute, a defendant will receive credit only for the number of days spent "in confinement."

Neither statute defines the term "in confinement." "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Bell*, 442 Mass. 118, 124 (2004), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977).

General Laws c. 127, § 129B, implicitly equates the term "in confinement" with "held in custody," as § 129B only pertains to those prisoners who were "held in custody awaiting trial." In its "usual" meaning, the term "held in custody" is not used to describe a person released on bail subject to pretrial probation conditions — indeed, being released on bail is the very antithesis of "custody." Although probation conditions may involve substantial and indeed severe restrictions on the probationer's liberty, we do not refer to such restrictions as "custody." Rather, our terminology refers to a probationer as under the "supervision" of the probation department, not as committed to the "custody" of the probation department. Moreover, the potential consequences of a violation of the terms of pretrial probation are the revocation of bail, acceleration of the trial date, or an adjudication of contempt. See *Jake J.* v. *Commonwealth*, 433 Mass. 70, 76-78 & n.6 (2000). Violation of geographic restrictions imposed by way of pretrial probation would not constitute the crime of escape, whereas a "prisoner who is held in custody for a court appearance" may be prosecuted for escape or attempted escape. G. L. c. 268, § 16. Thus, by common usage and understanding, probation conditions that restrict a probationer's freedom of movement are not

considered a form of "custody," and the Legislature's use of the term "held in custody" does not suggest any intent to extend sentence credit for time spent subject to such pretrial probation conditions.

The legislative history of G. L. c. 279, § 33A, indicates that the Legislature's purpose was to give sentencing credit for time spent in a jail or correctional institution while awaiting trial. Section 33A was first enacted in 1955, St. 1955, c. 770, § 101, as part of a large-scale reorganization of the Commonwealth's correctional system. On June 9, 1955, Governor Herter submitted proposed legislation, along with the report and recommendations of a committee that he had appointed to study the correctional system as a whole. The committee's lengthy report included the recommendation that legislation be enacted "granting a prisoner credit for time served in jail up to the imposition of sentence." 1955 Senate Doc. No. 750 at 75. The basis for that recommendation, under a section of the report entitled "Crediting of Jail Time on the Sentence," was as follows:

> "At present in Massachusetts the time a defendant serves in jail prior to the sentence is not credited on the sentence which is later imposed. In a number of jurisdictions, such jail time is credited on the sentence, and the Committee feels that such credit is a fair and worthwhile practice. Statutory provision is necessary. A suggested model is the statute in New York, which provides that any time spent by a person convicted of a crime in a prison or jail prior to his conviction and before sentence has been pronounced shall be calculated as a part of the sentence imposed.

> "Since the crediting of jail time would, under such a statute, be deemed time served on the sentence, it should be deemed time served in relation to parole eligibility, and if the prisoner remains to serve out his sentence, it should similarly be credited to reduce the maximum sentence."

*Id.* The committee drafted proposed legislation to implement the many reforms recommended in its report, and the Governor's submission to the Legislature recommended passage of the committee's draft. *Id.* at 2, 108-195. With respect to sentencing

credit, the committee's draft bill provided: "The court on impos-
ing a sentence of commitment to the custody of the commis-
sioner of correction may, in its discretion, order that the prisoner
be deemed to have served a portion of said sentence, such por-
tion to be determined by the court and not to exceed the number
of days spent by the prisoner in confinement prior to such
sentence awaiting and during trial." *Id.* at 190. Thus, the com-
mittee itself used the term "in confinement" to implement its
recommendation that sentencing credit be given for time spent
"in jail" or "in a prison." When the Legislature adopted identi-
cal language in St. 1955, c. 770, § 101, it presumably intended
that the term "in confinement" have the same meaning as that
described in the committee's report and its accompanying draft
legislation.[5,6]

The defendant contends that the application of sentencing
credits is to be governed by principles of "fairness" and not by
an overly technical reading of the statutes. See *Chalifoux* v.
*Commissioner of Correction*, 375 Mass. 424, 427-428 (1978);
*Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*,
372 Mass. 387, 394 (1977); *Commonwealth* v. *Grant*, 366 Mass.
272, 275 (1974). We have resorted to general principles of fair-
ness when confronted with the proper calculation of sentencing
credits in cases involving complex sequences of multiple charges

---

[5]The only difference between the committee's proposed provision for
sentencing credit and that enacted by the Legislature is that the committee
draft applied to defendants receiving "a sentence of commitment to the
custody of the commissioner of correction," whereas the statute as enacted ap-
plied to defendants receiving "a sentence of commitment to a correctional
institution of the commonwealth." Compare 1955 Senate Doc. No. 750 at
190, with St. 1955, c. 770, § 101. This change in language has no effect on
the meaning of "in confinement" for purposes of calculating the credit a
defendant may receive.

[6]Whereas the statute as originally enacted gave a judge discretion to grant
sentencing credit for time spent "in confinement" awaiting trial, St. 1955,
c. 770, § 101, the statute was amended three years later to require sentencing
credit for all defendants who spent time "in confinement" awaiting trial. St.
1958, c. 173. This shift from discretionary to mandatory application of sentenc-
ing credit has no impact on the meaning of "in confinement." In 1961, the
statute was amended to apply to defendants being sentenced to "a correctional
institution of the commonwealth, a house of correction, or a jail," St. 1961,
c. 75, whereas the original statute had only applied to defendants being
sentenced to "a correctional institution of the commonwealth." St. 1955,
c. 770, § 101. Again, this amendment has no bearing on the meaning of "in
confinement."

and sentences, which pose difficulties in determining which charge or charges resulted in the pretrial detention and in calculating which sentence or sentences should receive credit. See, e.g., *Chalifoux* v. *Commissioner of Correction, supra* at 425, 428-429 (inmate held in California on California sentence that was intended to run concurrently with Massachusetts sentence; unfair to deny sentencing credit when authorities declined to retrieve him from California due to prison overcrowding); *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk, supra* at 388-389, 391, 396-397 (prisoner serving sentence on convictions from one county later overturned on appeal; entitled to credit on sentence imposed in another county where, but for invalid sentence, he would have been held on charges in that county); *Commonwealth* v. *Grant, supra* at 273, 275-276 (where single incident led to both State and Federal charges and defendant convicted only on State charges, defendant entitled to time spent awaiting trial in Federal custody); *McCormack* v. *Commonwealth,* 345 Mass. 514, 514-515 (1963) (defendant charged on three indictments arising from same incident, but bail set on only one indictment; defendant entitled to credit when he pleaded guilty to another indictment and was acquitted of indictment on which bail had been set). See also *Commonwealth* v. *Boland,* 43 Mass. App. Ct. 451, 454 (1997); *Commonwealth* v. *Foley,* 17 Mass. App. Ct. 238, 241-244 (1983); *Commonwealth* v. *Aquafresca,* 11 Mass. App. Ct. 975, 976 (1981). The defendant cites no precedent, however, for the proposition that we resort to our own sense of "fairness" as a substitute for the Legislature's intent in its use of the statutory terms "in confinement" and "held in custody." Whether we think it is "fair" or not, the Legislature's intent in using those terms was to grant sentencing credit for time spent in jail or prison while awaiting trial, and it is that intent that we must honor in applying the sentencing credit statutes.

We have found only one case where sentencing credit was granted a defendant for time spent in a facility other than a jail or prison. In *Stearns, petitioner,* 343 Mass. 53 (1961), we allowed sentencing credit for time spent committed to a State hospital while awaiting trial. There, the court reasoned that a detainee committed to Bridgewater State Hospital was held "in

custody . . . awaiting trial" when he was "held on criminal process . . . in a mental hospital pending his restoration to sanity." *Id.* at 56. Although a State hospital is not technically a "prison" or "jail," the nature of such a commitment is the functional equivalent of being incarcerated, and sentencing credit for such time is consistent with the Legislature's intent.[7]

Being restricted to one's home is not the equivalent of being incarcerated. See *Commonwealth* v. *Cowan*, 422 Mass. 546, 549 (1996) (under statute imposing mandatory sentence to "jail or house of correction," sentencing judge not authorized to sentence defendant to house arrest). See also *Commonwealth* v. *Speight*, 59 Mass. App. Ct. 28, 31-32 (2003) (probation condition that defendant enter inpatient treatment program not equivalent to incarceration; defendant therefore not allowed to claim sentencing credit for time spent in treatment facility). While home confinement restricts a defendant's movements outside the home, it otherwise accords a defendant freedom to do as he wishes when he wishes, to associate with whomever he pleases, and to do so in the comfort and complete privacy of his own home. Home confinement is a far cry from the pervasive restrictions and surveillance imposed on persons confined to jail, prison, or a State hospital. "While a defendant's movement may be severely curtailed by the conditions of his home confinement, it cannot seriously be doubted that confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense." *United States* v. *Zackular*, 945 F.2d 423, 425 (1st Cir. 1991).

When the Legislature enacted G. L. c. 279, § 33A, in 1955, there was no electronic monitoring program, and the technology for effectively restricting a defendant to his home was not yet even invented. See Note, Anthropotelemetry: Dr. Schwitzgebel's Machine, 80 Harv. L. Rev. 403, 405-406 (1966) (predicting and analyzing potential uses of experimental tracking devices that might permit release of persons who would otherwise be incarcerated). We do not believe that the Legislature intended the terms "held in custody" or "in confinement" to include a

---

[7]Here, the defendant received sentencing credit for the days he was committed to Bridgewater State Hospital and Tewksbury State Hospital.

far less restrictive probation condition that was not then even contemplated. Rather, the purpose of the statute was to "provide for relief to those defendants who have served any jail time prior to their sentences." *Commonwealth* v. *Grant, supra* at 274. See *Commonwealth* v. *Carter,* 10 Mass. App. Ct. 618, 620 (1980) (purpose of sentence credit statute was to afford relief to persons unable to make bail). We thus interpret the term "in confinement" to mean confinement in a jail or prison, or confinement in some comparably secure and restrictive institutional setting. See *Commonwealth* v. *Speight, supra* at 32 (in order to receive sentencing credit for time spent subject to probation condition, defendant would have to show that "deprivation of liberty to which [he] was subjected approached incarceration"). Confinement to one's home is not comparable to incarceration, and does not entitle a defendant to sentencing credit under G. L. c. 279, § 33A.

Our conclusion that pretrial home confinement does not qualify for sentencing credit is consistent with that of other jurisdictions interpreting sentencing statutes that give credit for time spent "in confinement" or "in custody." See *Bush* v. *State,* 338 Ark. 772, 775, 779-781 (1999); *People* v. *Ramos,* 138 Ill. 2d 152, 156, 159-162 (1990); *Purcell* v. *State,* 721 N.E.2d 220, 224 n.6 (Ind. 1999); *State* v. *Wilkinson,* 539 N.W.2d 249, 252-253 (Minn. Ct. App. 1995); *State* v. *Second Judicial Dist. Court,* 116 P.3d 834, 836-837 (Nev. 2005); *State* v. *Faulkner,* 102 Ohio App. 3d 602, 603-604 (1995); *Commonwealth* v. *Kyle,* 582 Pa. 624, 632, 638-641 (2005); *State* v. *Pettis,* 149 Wis. 2d 207, 209, 211-212 (1989). See also *United States* v. *Zackular, supra* at 424-425 (period of home confinement does not qualify for sentencing credit under statute giving credit for time spent "in official detention"). A few jurisdictions allow sentencing credit for time spent in home confinement, but the statutes in question use language expressly allowing credit in such circumstances. See, e.g., *People* v. *Lapaille,* 15 Cal. App. 4th 1159, 1163-1164 n.3, 1164-1165 (1993) (statute grants credit for time spent "in custody, including, but not limited to, any time spent in a jail . . . or home detention program"); *State* v. *Speaks,* 119 Wash. 2d 204, 207-209 (1992) (statute allows credit for "confinement time," defining "confinement" to include "home detention").

Our statutes contain no express provision giving credit for home confinement, and we decline to read any such provision into the statutes. We interpret the terms "in confinement" and "held in custody," as used in G. L. c. 279, § 33A, and G. L. c. 127, § 129B, to refer solely to confinement in a jail, prison, or comparably restrictive institutional setting. The judge's decision denying the defendant's motion to correct the mittimus is therefore affirmed.

*So ordered.*