van Gestel, Allan, J.
This matter is before the Court on the motion of the plaintiff, IVPCare, Inc. (Delaware) (“IVPCare”), seeking summary judgment on liability, Paper #44. At this time Harvard Pilgrim Health Care, Inc. (“HPHC”) is the only remaining defendant.

BACKGROUND

The case involves the application and reach of the “Any Willing Provider” pharmacy statute. G.L.c. 176D, sec. 3B (the “AWP”). IVPCare seeks declaratory and injunctive relief, and damages, based on alleged statutory violations by HPHC. IVPCare also alleges that the refusal of HPHC to abide by the mandates of the Act, including, but not limited to, rejection of IVPCare’s requests to participate as a provider in two HPHC restricted pharmacy networks, constitutes knowing and willful unfair and deceptive business practices in violation of G.L.c. 93A.
IVPCare is an affiliate of a Texas-based pharmacy company specializing in the sale of injectable medications prescribed in the treatment of infertility, that was licensed on June 26, 2003, to operate a retail pharmacy from an office in Wilmington, Massachusetts. IVPCare alleges that HPHC has refused to contract with it for the supply of infertility drugs and for other specialty medications to HPHC members, in violation of G.L.c. 176D, sec. 3B.
HPHC is a health maintenance organization that provides prescription drug benefits to its members in Massachusetts through networks of retail walk-in pharmacies. Hundreds of pharmacies in the HPHC service area have joined these pharmacy networks. The great majority of its members are entitled to fill their prescriptions at participating network pharmacies.
For some specialty and typically high-cost pharmaceuticals, however, HPHC has established two networks limited to a small number of pharmacies to provide the specialty drugs. These small networks provide significant savings to HPHC.
In the network for infertility drugs, HPHC has selected two entities for its limited network: Freedom Drug and Brookline Village Apothecary, Inc.
In the network for specialty medications, HPHC’s restricted pharmacy network is comprised of three primary participating pharmacies: Nova Factor, Inc.; CuraScript; and Caremark, Inc.[1]
IVPCare seeks admission to these select networks and grounds its case on provisions of G.L.c. 176D, sec. 3B.
HPHC opposes the motion on the ground that its infertility and specialty pharmacy networks fit within the “mail-order” network exemption contained in c. 176D, sec. 3B, and that a mere violation of Sec. 3B is insufficient to raise a c. 93A claim.
There is no dispute that HPHC’s infertility and specialty pharmacy networks fall within the definition of “restricted pharmacy networks” within AWP. Nor is it disputed that IVPCare is a Massachusetts licensed pharmacy under the AWP or that IVPCare has not been permitted by HPHC to participate in HPHC’s infertility and specialty pharmacy networks.

DISCUSSION

Summary judgment is granted where there are no issues of genuine material fact and the moving party is entitled to judgment as a matter of law. Lindsay v. Romano, 427 Mass. 771, 773 (1998); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
In pertinent part, G.L.c. 176D, sec. 3B, provides:
A carrier that offers insureds a restricted pharmacy network shall comply with the following requirements for the purpose of promoting fair and competitive bidding:
*588 The provisions of this section shall not apply to arrangements for the provision of pharmaceutical drug benefits to insureds between a carrier and a mail order pharmacy, a hospital-based pharmacy which is not a retail pharmacy, a pharmacy maintained by a physician group practice or clinic which is not a retail pharmacy or a pharmacy wholly-owned by a carrier.
HPHC is a “carrier” for purposes of the AWP.
Although the AWP contains some definitions, it does not define “mail order pharmacy.” Nor has the Court been made aware of any Massachusetts appellate or Superior Court case interpreting the AWP in any way.
There are two local Federal cases, in each of which HPHC was involved, that address other aspects of the AWP, but not the issue of the definition of “mail order pharmacy.” See J.E. Pierce Apothecary, Inc. v. HPHC Health Care, Inc., 365 F.Sup.2d 119 (D.Mass. 2005), and American Drug Stores, Inc. v. HPHC Health Care, Inc., 973 F.Sup. 60 (D.Mass. 1997).
In the absence of legislative history or á statutory or appellate court definition, this Court must interpret the phrase “mail order pharmacy” giving the phrase its usual and accepted meaning, as long as that meaning is consistent with the statutory purpose. Commonwealth v. Morasse, 446 Mass. 113, 116 (2006).
One dictionary definition of “mail order” is, simply, “an order for goods to be sent by mail.” New World Dictionary of the American Language, Second College Edition (1986).[2] That same dictionary defines “mail” as “letters, papers, packages, etc., handled, transported, and delivered by the post office.” The “post office” is defined as “the governmental department in charge of the mails.”
Interestingly, The World Book Dictionary (2000) defines “mail order” as “an order sent by mail for goods that are to be shipped by mail or other means." (Emphasis added.) In this age of Federal Express, United Parcel Service, DHL, and the like, it does not seem to this Court that “mail order” should be narrowly limited to just the United States Postal Service.
HPHC cites to the National Mail Order Association which describes “mail order” as follows:
Mail order is a term that refers to many different methods of soliciting and/or selling products or services at a distance, where the potential customer is not physically present at a store or other location to make a purchase or place an order . . . [A] key characteristic of mail order is that the order is placed remotely. The order from a customer may be received by the seller through telephone, mail, fax, electronic shopping cart or email. Neither the method of reply nor ordering really matters; the single characteristic of all mail order is that the customer is not physically present when placing the order. Finally, fulfillment of physical goods ordered via mail order is done by delivery through common carrier such as the United States Post Office, United Parcel Service, FedEx and others.
Other states that have defined “mail order pharmacy” have included pharmacies that deliver the drug or device to the patient by the United States mail, a common carrier, or a delivery service. See, e.g. N.H. Rev. Stat. Ann. sec. 318:1 at VII-b; Ariz. Admin. Code, sec. 4-23-110 (2004); III Comp. Stat. 85/3; Mont. Code Ann. sec. 37-7-702(1); Ohio Admin. Code 4729-10-01; N.C. Gen. Stat. sec. 90-85.21(A)(a).
This Court sees in the definition of “mail order pharmacy” both a legal and a factual component. It is in part legal because the words are used in the AWP and it is the Court’s role to interpret statutory language. But there is a factual component that comes with assessing the intent of the Legislature in using the words. Not only are the dictionary meanings of the words to be considered, but so too here is the industry usage and practices an important component in understanding what meaning should be given to the words.
“Mail order” is a method of doing business that is much more focused on how the transaction occurs than on who it is that makes delivery of the product.
Because the meaning intended for a “mail order pharmacy” is a matter in dispute, and because it has a factual element that is part of the dispute, this Court cannot resolve the issue on a motion for summary judgment. This issue needs to be litigated, therefore liability cannot now be established on any of the counts of the complaint.

ORDER

For the foregoing reasons, the Plaintiffs Motion for Summary Judgment on Liability, Paper #44, is DENIED. This denial is not to be considered as establishing the law of this case.

 A fourth specialty pharmacy, Express Scripts Specialty Distribution Services, Inc., participates in HPHC’s specialty network solely for the provision of two medications for which it has an exclusive arrangement with the manufacturers of those two drugs.

 Webster’s Ninth New Collegiate Dictionary (1991), Webster's II New College Dictionary (3rd ed. 2005) and The New Oxford American Dictionary (2001) each contain similar definitions.