NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13677

DONTA L. LEWIS  vs.  COMMONWEALTH.

Suffolk.      October 10, 2025. – January 20, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, & Wolohojian, JJ.

Bail.  Supreme Judicial Court, Superintendence of inferior courts.  Statute, Construction.  Moot Question.  Words, "Release."

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on September 9, 2024.

The case was considered by Dewar, J.

Patrick Levin, Committee for Public Counsel Services, for the petitioner.
Brynn M. Morse, Assistant District Attorney (Emery Donatelle, Assistant District Attorney, also present) for the Commonwealth.

WOLOHOJIAN, J.  The question in this case is whether, for purposes of G. L. c. 276, § 58, a crime may be deemed to have been committed while "on release" if it was committed while a person remained in detention after bail had been set, but not

yet posted. We conclude that the answer to this question is "no."

Background. In May 2022, the defendant, Donta L. Lewis,[1] was charged by complaint in the Boston Municipal Court (BMC) with two counts of possessing a large capacity firearm, G. L. c. 269, § 10 (m); two counts of carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); two counts of carrying a firearm without a license, G. L. c. 269, § 10 (a); and possessing ammunition without a firearm identification (FID) card, as a subsequent offense, G. L. c. 269, § 10 (h) (1). He was also charged with being an armed career criminal subject to sentencing enhancement under G. L. c. 269, § 10G (c). At arraignment, a judge sitting in the BMC ordered that the defendant be committed without bail, pursuant to G. L. c. 276, § 58A, and made a finding of dangerousness.

Three months later, in August 2022, the BMC charges were dismissed when the defendant was indicted by a grand jury for numerous firearms offenses stemming from the same incident underlying the BMC charges.[2] Thereafter, the defendant continued to be held without bail on dangerousness grounds.

_____

[1] Although Lewis commenced this action by filing a petition in the county court, for convenience, we refer to him as the defendant.

[2] Specifically, the defendant was charged with carrying a firearm without a license, G. L. c. 269, § 10 (a); two counts of

The following year, superseding indictments were returned against the defendant, charging him with, as pertinent here, possession of a firearm without a license, G. L. c. 269, § 10 (a), as an armed career criminal subject to sentencing enhancement under G. L. c. 269, § 10G (c).[3]  The defendant was again ordered held without bail pursuant to G. L. c. 276, § 58A, after a finding of dangerousness.

In January 2024, a Superior Court judge dismissed so much of the armed career criminal indictment as charged more than one prior violent crime;[4] as a result, the defendant's potential sentencing exposure was reduced from fifteen years to three years.  Compare G. L. c. 269, § 10G (a), with G. L. c. 269, § 10 (c).  The defendant then moved for reconsideration of his pretrial detention in light of this new circumstance.

---

possessing ammunition without an FID card, G. L. c. 269, § 10 (h); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); and two counts of possessing a large capacity feeding device, G. L. c. 269, § 10 (m).

[3] Superseding indictments also issued for two counts of possession of ammunition without an FID card, G. L. c. 269, § 10 (h); carrying a loaded firearm without a license, G. L. c. 269, § 10 (n); and two counts of unlawful possession of a large capacity feeding device, G. L. c. 269, § 10 (m).

[4] In Commonwealth v. Lewis, 497 Mass.    (2026), also issued today, we affirm the ruling of the Superior Court judge partially dismissing the armed career criminal charge. Proceedings in the Superior Court were stayed pending the Commonwealth's appeal.

On January 31, 2024, a second Superior Court judge allowed the motion and set bail at $7,500 cash, with conditions including global positioning system (GPS) monitoring.  At that time, the clerk gave the defendant the statutory warning required by G. L. c. 276, § 58, to wit, that if the defendant were to be "charged with a crime during the period of [his] release on bail," his bail could be revoked pursuant to G. L. c. 276, § 58.  The defendant did not post bail in the set amount and remained in custody.  While he so remained, the defendant allegedly committed a new offense on May 28, 2024 (custodial offense).

Not long thereafter, on June 6, 2024, the defendant moved to reduce the amount of bail.  After again making a finding of dangerousness, a third Superior Court judge, on June 11, 2024, revoked the previous bail order, reduced the bail amount to $5,000 cash and imposed conditions, including GPS monitoring.  Again, the clerk provided the statutory warning to the defendant stating, "[I]f you post this bail and you're charged with a crime during the period of your release on bail, your bail on this case may be revoked."  It appears that the judge was not made aware of the custodial offense before reducing the bail amount.

The defendant did not immediately post bail.  While he remained in custody, a new complaint issued in the BMC on July

22, 2024, charging the defendant with the custodial offense, which was assault and battery by means of a dangerous weapon.

Four days later, on July 26, 2024, the defendant posted the $5,000 bail amount and was released.

Approximately one month later, on August 28, 2024, the defendant was arraigned in the BMC on the complaint charging the custodial offense. At arraignment, the Commonwealth moved, pursuant to G. L. c. 276, § 58, seventh par., to revoke the bail that had been set in the Superior Court case on June 11, 2024. A judge in the BMC allowed the Commonwealth's motion on August 28, 2024, ordered the defendant committed for sixty days, and denied the defendant's subsequent motion for reconsideration.

The defendant thereafter filed a petition pursuant to G. L. c. 211, § 3, arguing that the seventh paragraph of G. L. c. 276, § 58, did not authorize bail revocation where he allegedly committed a new offense while neither "on release pending adjudication of a prior charge" nor "during said period of release," but rather while he was in custody. Reaching the merits of the petition, the single justice ruled that the seventh paragraph of § 58 authorized bail revocation in these circumstances and denied relief. The case is now before us on appeal from the ruling of the single justice.

Discussion. "We review a single justice's denial of a petition under G. L. c. 211, § 3, for clear error of law or

abuse of discretion."  Campbell v. Commonwealth, 494 Mass. 750, 752 (2024).  Where, as here, "the defendant raises an issue of law, we review the single justice's decision de novo."  Garcia v. Commonwealth, 487 Mass. 97, 101 (2021).

The bail revocation order at issue in this case expired after sixty days both of its own terms and also by reason of G. L. c. 276, § 58, seventh par., and the parties agree that this appeal is accordingly moot insofar as it concerns the defendant's own interests.  Nevertheless, "[i]t is within the discretion of this court to review a case regardless of its mootness," where, as here, the issue presented is "capable of repetition, yet evading review," due to the sixty-day duration of a bail revocation order under G. L. c. 276, § 58, seventh par., the case presents a novel question of statutory interpretation that is of public importance, and the issue has been fully briefed and argued on both sides (citation omitted). Commonwealth v. McCulloch, 450 Mass. 483, 486 (2008).  See Commonwealth v. Humberto H., 466 Mass. 562, 574 (2013); Lockhart v. Attorney Gen., 390 Mass. 780, 782-783 (1984).  For these reasons, we exercise our discretion to address the defendant's argument, which is, in essence, that the word "release" as it appears in § 58, seventh par., cannot be construed so broadly as to encompass the period when a defendant remains in custody after bail has been set, but not yet posted.

As pertinent here, G. L. c. 276, § 58, seventh par., requires that a judge "shall provide as an explicit condition of release for any person admitted to bail . . . that[,] should said person be charged with a crime <u>during the period of his release</u>, his bail may be revoked" (emphasis added).  Where a defendant has been so advised, that same paragraph of § 58 authorizes a trial court judge to revoke the bail of a person "<u>on release</u> pending the adjudication of a prior charge" if the judge, "after a hearing at which the person shall have the right to be represented by counsel, finds probable cause to believe that the person has committed a crime <u>during said period of release</u>" (emphases added).  <u>Id</u>.

As a preliminary matter, we note that neither the phrase "on release" nor the word "release" are defined in § 58.  "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . .  We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions."  <u>Commonwealth</u> v. <u>Morasse</u>, 446 Mass. 113, 116 (2006), quoting <u>Commonwealth</u> v. <u>Bell</u>, 442 Mass. 118, 124 (2004).  In ordinary usage, the noun "release" refers to "the state of being liberated or freed" or "the act of liberating or freeing:  discharge from restraint."  Webster's

Third New International Dictionary 1917 (1971).  The customary meaning of the term is thus incompatible with the idea of being held in the physical custody of the State.

The statute as a whole gives no indication that the Legislature intended "release" to have something other than its customary meaning.  Indeed, the word "release," or derivative variants of it, is used throughout § 58 to indicate a person's status of being in the greater community outside of State custody.  For example, in the first paragraph of § 58, the word "release" is used to refer to a person being admitted "to bail on his personal recognizance without surety."  G. L. c. 276, § 58, first par.  The phrase "'personal recognizance' means '[t]he release of a defendant in a criminal case in which the court takes the defendant's word that he or she will appear for a scheduled matter or when told to appear."  Commonwealth v. Madden, 458 Mass. 607, 611 (2010), quoting Black's Law Dictionary 1386 (9th ed. 2009).  And "[a]n individual who is released on personal recognizance . . . has been freed from custody with no restraints on his liberty."  Madden, 458 Mass. at 612.  By way of further example, the statute provides that a trial court judge making a bail determination is to take into account whether a defendant is "on probation, parole, or other release" (emphasis added).  G. L. c. 276, § 58, first par. Under the doctrine of ejusdem generis, the general word

"release," as used in this list, should be "construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words," which in this circumstance means being outside of physical custody. Commonwealth v. Perez Narvaez, 490 Mass. 807, 814 (2022), quoting Banushi v. Dorfman, 438 Mass. 242, 244 (2002). In another example, the statute provides that "[i]f the defendant is released on bail from the place of detention, a reasonable attempt shall be made to notify the victim of the defendant's release by the arresting police department. If the defendant is released on bail by order of a court, a reasonable attempt shall be made to notify the victim of the defendant's release by the district attorney" (emphases added). G. L. c. 276, § 58, fourth par. All of these passages reinforce that the Legislature did not intend the phrase "on release" as used in § 58, seventh par., to mean "while detained."

The Commonwealth presses the argument that the statute appears to equate being "on release" with being "admitted to bail." Accordingly, the Commonwealth reasons, a defendant for whom bail has been set in some amount, but who has not in fact posted bail, is "on release" within the meaning of § 58, seventh par. But being admitted to bail is not merely to have bail set. Rather, as we have stated in connection with the closely related statute G. L. c. 276, § 58A, "[t]he phrase 'admi[t] to bail' has

been defined as '[a]n order to release an accused person from custody after payment of bail or receipt of an adequate surety for the person's appearance for trial.'" Madden, 458 Mass. at 611, quoting Black's Law Dictionary 54 (9th ed. 2009). See G. L. c. 248, § 19 (prisoner "shall be admitted to bail if sufficient bail is offered; and if not, he shall be remanded"). Thus, a person is "admitted to bail" when he or she is released from custody as a result of paying the bail amount set by a judge or receipt of any required surety -- not at the moment when bail or surety is ordered.

Our decision today does not mean that a defendant cannot be detained due to crimes committed prior to posting bail. For example, under G. L. c. 276, § 58, tenth par., a judge may increase the amount of bail where "changed circumstances or other factors not previously known or considered, make the order of bail or recognizance ineffective to reasonably assure the appearance of [the] defendant before the court." In addition, a court retains inherent power to revoke bail when the circumstances justify the exercise of that power.[5] See Commonwealth v. Pagan, 445 Mass. 315, 321-322 (2005), and cases

---

[5] The BMC judge here did not purport to exercise this power, and we express no view on whether he could properly have done so in the circumstances of this case.

cited.  Moreover, we see no reason why, after arraignment on a new offense, a judge could not simply issue a new bail order relative to that offense, with the result that the defendant is detained anew.  But here the judge could not rely on the seventh paragraph of § 58 to revoke the defendant's bail on the ground that he had committed an offense after he had been "admitted to bail" and was "on release."

Conclusion.  The judgment of the county court is reversed.  A judgment shall enter in the county court vacating the order revoking the defendant's bail.

So ordered.